# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 73415-6-I |
|  | ) |  |
| BARBARA TEMPLIN, | ) | DIVISION ONE |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| JAMES KLAVANO, | ) | UNPUBLISHED |
|  | ) |  |
| Respondent. | ) | FILED: August 29, 2016 |
|  | ) |  |

Cox, J. — Barbara Templin appeals the dissolution decree ending her marriage to James Klavano. The trial court properly exercised its discretion in admitting Trial Exhibit 301, distributing property, and declining to award Templin maintenance. But the court failed to apply the proper standards—need and ability to pay—in denying Templin's request for reasonable attorney fees at trial.

Klavano's cross appeal raises several issues. None of his claims establishes that the trial court committed reversible error in any respect.

We affirm the decree, except for the denial of Templin's request for reasonable attorney fees. We remand the question of whether such fees should be awarded to the trial court for reconsideration with directions that it apply the proper standards. We award Templin reasonable attorney fees and expenses on

appeal, the amount of which the trial court shall determine on remand.[1] We deny Templin's motion to strike portions of Klavano's cross reply brief.[2]

Barbara Templin and James Klavano married on May 4, 2003. They had no children together. Each had a prior marriage. The trial court found that they separated on July 22, 2013, after this 10 year marriage.

Templin has been a flight attendant for over 30 years. Klavano owned several businesses before and during this marriage.

Templin petitioned for dissolution of the marriage in July 2013. This case has been, and continues to be, highly contested. The trial court noted this with reference to the trial court proceedings in its ruling denying attorney fees.[3]

Following a nine day bench trial, the trial court prepared and entered its findings of fact and conclusions of law. Thereafter, the court entered the dissolution decree. "Exhibit 1" to the decree is a chart that shows, among other things, the court's distribution of property. The trial court also denied Templin's request for an award of reasonable attorney fees.

Templin moved for reconsideration of the denial of an award of attorney fees to her. The trial court denied this motion.[4]

Templin appeals. Klavano cross appeals.

---

[1] RAP 18.1(i) and the other Rules of Appellate Procedure.

[2] A motion to strike "is typically not necessary to point out evidence and issues a litigant believes this court should not consider." Engstrom v. Goodman, 166 Wn. App. 905, 909 n.2, 271 P.3d 959 (2012). A party's brief is the appropriate vehicle for pointing out allegedly extraneous materials. Id. In this case, we considered all that is properly before us and disregarded all that is not.

[3] Clerk's Papers at 2340-41.

[4] Id. at 2478-79.

## STANDARD OF REVIEW

In dissolution proceedings, the trial court "has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080."[5] Appellate courts generally defer to trial courts on this question because they are "'in the best position'" to assess the parties' assets and liabilities "in order to determine what constitutes an equitable outcome."[6]

We review for abuse of discretion the trial court's decisions on property disposition, maintenance, and awardability of reasonable attorney fees.[7]

A trial court abuses its discretion if its "decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[8] A decision is manifestly unreasonable "if it is outside the range of acceptable choices, given the facts and the applicable legal standard."[9] A decision is based on untenable grounds "if the factual findings are unsupported by the record."[10] A decision is based on untenable reasons "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard."[11]

---

[5] In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013).

[6] In re Marriage of Neumiller, 183 Wn. App. 914, 920, 335 P.3d 1019 (2014) (quoting In re Marriage of Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999)).

[7] In re Marriage of Wright, 179 Wn. App. at 261; In re Marriage of Kile, 186 Wn. App. 864, 886, 888, 347 P.3d 894 (2015).

[8] State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015) (internal quotation marks omitted) (quoting Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)).

[9] In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

[10] Id.

[11] Id.

We review the trial court's findings of fact for substantial evidence.[12] "Substantial evidence exists so long as a rational trier of fact could find the necessary facts were shown by a preponderance of the evidence."[13]

We do "not decide the credibility of witnesses or [re]weigh the evidence" on appeal.[14]

The trial court's findings of fact and conclusions of law must be "sufficient to suggest the factual basis for the ultimate conclusions."[15] Conclusions of law are reviewed de novo.[16]

## BASIS OF DECISIONS

Templin first argues that the trial court based its decisions on property division, maintenance, and attorney fees on Templin's alleged marital misconduct, not on RCW 26.09.080's controlling factors. Specifically, she argues that the court abused its discretion "in admitting [Trial] Exhibit 301, and then in relying on it [for] its property distribution and in denying the wife maintenance and fees."[17] The record does not support this argument.

RCW 26.09.080 governs the trial court's disposition of marital property and liabilities. When distributing property, courts may not consider "misconduct,"

---

[12] In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

[13] In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

[14] Id.

[15] In re Marriage of Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001).

[16] Lang Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015).

[17] Brief of Appellant at 31.

which "'refers to immoral or physically abusive conduct within the marital relationship . . . .'"[18]

Here, the trial court admitted Trial Exhibit 301—a copy of Templin's March 2008 journal entry—to assess Templin's credibility. The court expressly ruled that the exhibit would not be admitted to show fault.[19] This was not an abuse of discretion.

This exhibit is a copy of musings by Templin that she recorded in her journal during a March 2008 trip to Washington D.C. with Klavano. The document speaks for itself. We need not decide whether it is evidence of "misconduct" under the statutes and case law.

What is absolutely clear from this record is that the trial court admitted this exhibit for a proper purpose, not for the purpose of fault. For example, at the end of trial, the court reaffirmed that Washington is a "no fault state" and that the court did not see "any fault." Nothing in this record shows the trial court believed otherwise.

Templin fails to make any argument, supported by case or other authority, to challenge this ruling based on admissibility. We assume she has found no such support.

Templin primarily argues that the trial court improperly used this exhibit. She relies on a "finding" within the trial court's order denying her motion for

---

[18] In re Marriage of Urbana, 147 Wn. App. 1, 14, 195 P.3d 959 (2008) (quoting In re Marriage of Steadman, 63 Wn. App. 523, 528, 821 P.2d 59 (1991)).

[19] Report of Proceedings Vol. 1 (November 17, 2014) at 63-64; Clerk's Papers at 1546.

reconsideration to support her argument. But it is wholly unpersuasive. For reasons that are unclear to this court, the trial court stated in this order that this marriage was a "short-term marriage of four years. <u>See</u> Trial Exhibit 301."[20]

This is patently incorrect. The court's previously entered findings, conclusions, and decree make clear that the court determined this was a 10 year marriage, not one of only four years.

We also note that, in any event, the length of a marriage is not a proper criterion in determining whether fees should be awarded in a dissolution proceeding. Rather, need and ability to pay are controlling, as the legislature directs in RCW 26.09.140. In sum, this "finding" in the order on reconsideration is without force or effect.

There is absolutely no evidence to support the argument that the trial court used this properly admitted evidence for an improper purpose. Thus, we deny Templin's request to remand this case with directions that it be reassigned to a different judge.[21]

We now turn to consideration of the trial court's application of the statutes and case law to the duties before it. Those duties include making a just and equitable division of property and deciding whether maintenance should be awarded.

---

[20] Clerk's Papers at 2384.

[21] Brief of Appellant at 50.

## PROPERTY DISPOSITION

Templin argues that the trial court abused its discretion in its property disposition in several ways. None is persuasive.

Templin broadly asserts that the award to her of less than 10 percent of the marital estate, given her resources, is an abuse of discretion.[22] No property distribution requires mathematical precision.[23] And there is no "10%" rule in the distribution of property.

To determine whether this award was within the broad scope of the trial court's discretion, we look to Ovens v. Ovens.[24] That is a supreme court case that neither party discusses. But it is instructive.

There, both parties had been previously married and divorced.[25] Marjorie Ovens was a clerical worker at the time of the marriage, but was not employed thereafter.[26] She owned separate property at the time of the marriage.[27]

Wallace Ovens was an appliance salesman.[28] He, too, had separate property at the time of the marriage.[29] During the marriage, however, he

---

[22] Id. at 32.

[23] In re Marriage of Larson, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

[24] 61 Wn.2d 6, 8-9, 376 P.2d 839 (1962); see also In re Marriage of Soriano, 31 Wn. App. 432, 436, 643 P.2d 450 (1982).

[25] Ovens, 61 Wn.2d at 7.

[26] Id.

[27] Id.

[28] Id.

[29] Id.

7

received from his mother's estate cash distributions, securities, and household effects of substantial value.[30] From this separate property, he purchased a lot on which the parties later constructed a home.[31]

During the divorce proceedings that followed, the trial court divided the marital estate. Marjorie Ovens appealed, arguing that the division of property was not equal.[32]

The supreme court affirmed the award.[33] The court stated that an "equitable division of the total property involved does not entail a right to an equal division" of the parties' separate property.[34] The court held that the trial court had "properly awarded to each of the parties, respectively, their traceable separate property, and divided the community property equally."[35] The division awarded a greater portion of the total property to the husband because of his inheritance. But the "fact that the award to each spouse of his or her separate property resulted in unequal portions was not error."[36] "The division was equitable in view of [the husband's] inheritance."[37]

---

[30] Id.

[31] Id.

[32] Id. at 8.

[33] Id. at 11.

[34] Id. at 8.

[35] Id.

[36] Id. at 8-9.

[37] Id. at 9.

This case mirrors that one in large measure. Here, both parties had been previously married. Each came to the marriage with separate property. Klavano came with substantial separate property. Templin came with substantially less separate property than Klavano.

This trial court decided what constituted community property and what constituted traceable separate property. Exhibit 1 to the decree shows this. The court had to apply the statutory factors to divide a marital estate valued at over $8.4 million. Of this total, over $1.45 million was community property.

The court awarded 50 percent of the total community property to each party. It then made certain adjustments to Templin's share of her award. We discuss these in more detail later in this opinion.

The court further awarded Templin her traceable separate property totaling $215,933. And the court awarded Klavano his traceable separate property of over $6.8 million.

As in Ovens, the trial court in this case awarded 50 percent of the community property to each of the parties. While the court also awarded to Klavano his traceable separate property, which was substantial, that alone does not make the disposition of property inequitable. Ovens so holds. The trial court's property distribution in this case was not manifestly unreasonable.

We turn now to the question whether the court's division of property, applying the statutory factors, constituted an abuse of discretion.

*Statutory Factors*

Under RCW 26.09.080, courts must equitably distribute the parties' property and liabilities after considering:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

The factors listed in the statute "are not exclusive," and "the economic circumstances of each spouse upon dissolution is of paramount concern."[38]

The court "is not required to place the parties in precisely equal financial positions . . . ."[39] "A just and equitable division 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of [the] parties.'"[40]

A trial court abuses its discretion "if the property division creates a patent disparity in the parties' economic circumstances."[41]

_____

[38] In re Marriage of Larson, 178 Wn. App. at 138; In re Marriage of Harrington, 85 Wn. App. 613, 633, 935 P.2d 1357 (1997).

[39] In re Marriage of Wright, 179 Wn. App. at 262.

[40] In re Marriage of Larson, 178 Wn. App. at 138 (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).

[41] In re Marriage of Byerley, 183 Wn. App. 677, 685, 334 P.3d 108 (2014).

Here, the trial judge considered and applied the statutory factors in its findings of fact. We consider the challenges to these findings and the conclusions that follow.

*Nature and Extent of the Parties' Community Property*

Templin assigns error to portions of the trial court's Finding of Fact 2.8, dealing with community property. Among other things, she claims that Klavano undercompensated the marital community. Substantial evidence supports the court's finding to the contrary.

"If the management of separate assets consumes a more than insignificant amount of labor or time, then the community estate is entitled to fair compensation for the labor and effort."[42] If a spouse owning and working in a separate business failed to adequately compensate the community for his or her work in the business, courts "must determine what portion of the value of [the separate business] inures to the benefit of the community."[43]

Here, the trial court made no finding whether the marital community was unfairly undercompensated by Klavano's low W-2 wages. It found that even if it "were to find that the marital community was unfairly undercompensated . . . , the court finds that any such undercompensation was more than made up by [Klavano's] substantial separate property contributions to the marital

---

[42] 19 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW WITH FORMS § 5:2, at 121 (2d ed. 2015).

[43] Id.

community."[44] The court also found that Templin did not provide evidence refuting this.

Substantial evidence supports these findings. First, the trial court considered expert opinion testimony regarding Klavano's alleged undercompensation of the marital community. Klavano's expert compared Klavano's situation with that of a Chief Financial Officer working full time for a corporation generating substantial sales. But Klavano works less than full time and his company's sales were far less than the comparator corporation. The expert further opined that even if this comparison showed undercompensation, it was outweighed by Klavano's substantial contributions of separate property to the community.

Second, although Templin's expert testified about Klavano's compensation, Templin's expert did not give an opinion whether Klavano's salary was fair or reasonable. Moreover, the expert did not opine to what Klavano "should have or could have paid himself within the marital community."

The trial court was entitled to judge the credibility of these witnesses and decide on which evidence to rely. We conclude that its findings are supported by substantial evidence provided by the expert it chose to believe. We reject the argument to the contrary.

Templin also argues that the trial court did not include as community property patents that Klavano developed during the marriage. She specifically

---

[44] Clerk's Papers at 2456.

argues that the trial court "should have acknowledged the community interest in the patents as part of its property division."

Assuming without deciding that the patents are community property, Klavano testified that they had no value. And Templin produced no evidence showing any specific value of any patent.

We note that Exhibit 1 to the decree shows that one of Klavano's businesses, for which the patent was developed, had no value. This suggests that the trial court determined that the patents had no value for purposes of distribution. There was no error.

Templin argues that her entitlement to a share in the community property does not depend on her income contributions to the community. She takes issue with the trial court's finding stating "[t]here is little evidence that [Templin] contributed any significant income" to meet the marital community expenses.

But this was not the primary basis of the trial court's decision on the nature and extent of community property. When we consider the court's decision, as a whole, we conclude that it explicitly considered the statutory factors. Substantial evidence supports its findings of fact.

### Nature and Extent of the Parties' Separate Property

Templin argues that due to Klavano's "substantial separate property, the trial court should have at least awarded [Templin] a disproportionate share of the community property, a portion of [Klavano's] separate property, or both." The extent of his separate property alone does not support the result Templin seeks. Moreover, the cases she relies on do not support her argument.

For example, in In re Marriage of Pea, the parties were married longer than Templin and Klavano.[45] The wife also had minimal income, education, and earning ability and had difficulty reading and speaking English.[46] That is not the case for Templin.

In Lynn v. Lynn, the parties were also married longer than Templin and Klavano and had two young children.[47] The wife had an eighth grade education and custody of the children.[48] Again, that is not the case here.

In In re Marriage of Donovan, the parties were married longer than Templin and Klavano, and the wife spent most of her efforts caring for the parties' three children.[49] Templin is not in the same position.

*Parties' Economic Circumstances*

Templin argues that the trial court failed to consider her and Klavano's economic circumstances in its distribution decision. The record shows otherwise.

The court found that Klavano "had substantial separate property" when the parties married and that Templin "had some separate property." It also found that both parties were "in relatively good health" and that Klavano is "semi-retired and no longer receives W-2 wages." Klavano also "liv[es] off the income from his separate investments, and must use his separate capital to meet his living

---

[45] 17 Wn. App. 728, 729, 566 P.2d 212 (1977).

[46] Id.

[47] 4 Wn. App. 171, 176, 480 P.2d 789 (1971).

[48] Id. at 176, 178.

[49] 25 Wn. App. 691, 692-93, 612 P.2d 387 (1980).

expenses . . . and separate financial obligations." Templin does not challenge these findings of fact. Thus, they are verities on appeal.[50]

The trial court also found that Templin can continue to work as a flight attendant and that her alleged back injuries "do not affect her present employability and prospective earning capacity." More importantly, the trial court found that Templin "is fully capable of being self-supporting" as a flight attendant and "has no financial obligations beyond her monthly living expenses and whatever debts she may have incurred since separation."

Although Templin assigns error to these findings of fact, they demonstrate that the trial court considered the parties' economic circumstances. Templin also fails to argue what the court failed to consider and fails to cite authority stating what else the court should have considered.

*Pre-Decree Distributions*

Templin argues that a total of $132,959 in pre-decree distributions were improperly credited to her share of the property division. She claims this is so because she received and spent these funds prior to entry of the dissolution decree. We hold that this crediting was not an abuse of discretion.

Templin relies on In re Marriage of White, in which Division Two of this court stated that trial courts focus on the parties' assets at trial and may not distribute assets disposed of before trial.[51]

---

[50] Mueller v. Wells, 185 Wn.2d 1, 9, 367 P.3d 580 (2016).

[51] 105 Wn. App. 545, 549, 20 P.3d 481 (2001); see also In re Marriage of Kaseburg, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005).

Here, the judge characterized, in Exhibit 1 to the decree, money that Templin received during the parties' separation as "pre-decree distributions." This sum included temporary maintenance and was used to offset the equalization payment Templin would receive.

Templin's reliance on In re Marriage of White to argue that the trial court improperly credited these pre-decree distributions to her is misplaced. We say this in light of In re Marriage of Glorfield.[52]

There, Gloria Glorfield made a similar argument after the trial court deducted money she received during the parties' separation from her property award.[53] Her husband, Ben, had paid her maintenance and a sum of money to purchase a vehicle until the final decree was entered.[54] Division Three of this court affirmed the trial court's distribution, stating "it was [not] manifestly unreasonable for the [trial] court to deem these sums an advance by [Ben] and deduct them from the property distributed to [Gloria]."[55]

Similarly, here the sum the trial court credited to Templin's award was also an advance prior to the entry of the decree. As the court stated, this was money Templin received shortly before and after the parties separated as "pre-decree distributions" to be "used to offset the equalization payment" to her. This sum

---

[52] 27 Wn. App. 358, 617 P.2d 1051 (1980).

[53] Id. at 362.

[54] Id.

[55] Id.

included temporary maintenance and Klavano's separate property money towards automobiles that Templin kept for herself.

Under Glorfield's reasoning, the trial court's distribution was not manifestly unreasonable. White, which neither cites nor discusses Glorfield, does not require a different result.

Templin assigns error to various portions of the findings relating to the court's application of the RCW 26.09.080 factors regarding the property disposition. But she fails to argue all of them. We deem those not argued to have been abandoned.[56]

In sum, Templin fails in her burden to show that the trial court abused its decision in its property distribution.

## MAINTENANCE

Templin next argues that the trial court abused its discretion in failing to award her maintenance. Specifically, Templin claims that back injuries limited her ability to work as a full time flight attendant. We hold that there was no abuse of discretion in denying her maintenance.

RCW 26.09.090 governs spousal maintenance. The statute provides that courts *may* grant maintenance after considering all relevant factors including, but not limited to:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

---

[56] Kinderace LLC v. City of Sammamish, No. 73409-1-I, 2016 WL 3660798, at *1 n.1 (Wash. Ct. App. July 5, 2016).

17

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

When deciding whether to award maintenance, trial courts must also consider the property distribution.[57] Additionally, the parties' standard of living during marriage and the parties' post-dissolution economic circumstances are paramount concerns when considering maintenance and property awards.[58]

Financial need is not a prerequisite to a maintenance award.[59] This means "[a] spouse's 'demonstrated capacity of self-support does not automatically preclude an award of maintenance.'"[60] But "[t]he purpose of

---

[57] In re Marriage of Kile, 186 Wn. App. at 887.

[58] In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997).

[59] In re Marriage of Wright, 179 Wn. App. at 269.

[60] In re Marriage of Morrow, 53 Wn. App. 579, 585, 770 P.2d 197 (1989) (quoting In re Marriage of Washburn, 101 Wn.2d 168, 178, 677 P.2d 152 (1984)).

spousal maintenance is to support a spouse . . . until [he or] she is able to earn [his or] her own living or otherwise becomes self-supporting."[61]

"The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be 'just.' Maintenance is 'a flexible tool' for equalizing the parties' standards of living for an 'appropriate period of time.'"[62]

Where "'disparity in earning power and potential is great, [courts] must closely examine the maintenance award to see whether it is equitable'" in light of the parties' post-dissolution economic situations.[63]

As the statute and case law make clear, whether an award of maintenance is required is a discretionary determination to be made by the trial court.

Here, the trial court considered the statutory factors and acted within its discretion in declining to award Templin maintenance.

*Financial Resources of the Party Seeking Maintenance*

Templin argues that the trial court failed to consider her financial resources and inability to meet her needs independently. The record shows otherwise.

---

[61] In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

[62] In re Marriage of Wright, 179 Wn. App. at 269 (first quoting In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990); then quoting In re Marriage of Washburn, 101 Wn.2d at 179).

[63] In re Marriage of Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004) (quoting In re Marriage of Sheffer, 60 Wn. App. 51, 56, 802 P.2d 817 (1990)).

The trial court found that Templin received both separate and community property. This is an unchallenged verity on appeal.[64] The court further found that Templin "has the ability to meet her needs independently to a certain extent but not [to] the level she previously enjoyed during the course of this 10-year marriage."

Significantly, the court found that Templin continues to work as a flight attendant and is "fully capable of being self-supporting as she grows closer to retirement age with a higher hourly wage at [her current employer] and returning to full-time employment." These findings are amply supported by the evidence in the record. We reject the contention that the court ignored Templin's financial resources.

*Time Necessary to Enable the Party*
*Seeking Maintenance to Find Employment*

Templin argues that the trial court "ignored the practical realities of continued work as a flight attendant." She also argues that her "proposed vocational plan would have allowed her to continue [working as a flight attendant] while also working towards a career change." These arguments are unpersuasive.

The trial court found that Templin "needs no additional time to acquire sufficient education or training" and that "[t]he evidence d[id] not support a late in life career change."[65] Although Templin intends to further her education and start

---

[64] Mueller, 185 Wn.2d at 9.

[65] Clerk's Papers at 2465-66.

20

her own business, the record shows that such a career transition is not required by Templin's alleged physical limitations as she claims.

### Age, Physical and Emotional Condition, and Financial Obligations of the Party Seeking Maintenance

Templin argues that her age limits her ability to work as a flight attendant full time. The record shows otherwise.

The trial court found that Templin is 55 years old, is "in good physical and emotional condition," and had "no financial obligations beyond her monthly living expenses and whatever debts she may have incurred since separation."[66] Templin assigns error to the first part of this finding of fact but does not offer argument as to her emotional and physical condition, other than her back injury allegations. We need not further consider this latter point.[67]

The trial court found that Templin "sought no treatment for any alleged back injuries after 1993" and that "[h]er earnings after 1993 were not negatively affected by any alleged back injuries." Although Templin produced a letter from a doctor she visited in September 2014 due to back pain, this visit occurred over a year after the parties' separation and two months before trial began.

The trial court also found that "[n]o medical testimony was presented at trial to support [Templin's] claims of ongoing back issues and that those claims negatively affected her ability to continue working." The court further found that although Templin's "income productivity" decreased after the marriage,

---

[66] Id. at 2466.

[67] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

"[w]hether [Klavano] asked [Templin] to decrease her hours or [Templin] chose to decrease her hours . . . does not lend credibility to an unsupported claim of physical infirmity that prevents her from working full-time."

Templin does not challenge the trial court's finding that she "sought no treatment for any alleged back injuries after 1993" and that "[h]er earnings after 1993 were not negatively affected by any alleged back injuries." Thus, these findings are verities on appeal.[68] Further, any testimony presented as to Templin's back injuries was not based on her medical records. Rather, the testimony was based on what Templin told the witness and the above-mentioned letter from a doctor.

We also note that the trial court determined that Templin's claimed expenses were "inflated" and that "[l]ittle to no evidence was provided to support the inflated monthly expenses." Templin testified that she used cash to pay for some of her expenses and did not know if she kept receipts. She also testified that she did not keep some bills.

The court was entitled to decide that it did not believe Templin based on her testimony and other evidence in the record. Because this court does "not decide the credibility of witnesses or [re]weigh the evidence" on appeal, the trial court's assessment that Templin's expenses were inflated must stand.[69]

We conclude that substantial evidence supports the court's findings on this factor.

---

[68] Mueller, 185 Wn.2d at 9.

[69] A.W., 182 Wn.2d at 711.

*Standard of Living Established During the Marriage*

Templin assigns error to the trial court's finding of fact as to the parties' standard of living. There is no error.

The trial court found that the parties "enjoyed an upper middle class standard of living during [their] marriage." The trial court also found that the parties' standard of living "d[id] not support [Templin's] excessive claims for an award of maintenance."

Templin assigns error to this finding of fact, claiming that Klavano's business assets will provide him with an income that will allow him to enjoy the same standard of living that the parties enjoyed during their marriage. On the other hand, Templin claims that her lower income "will provide her nowhere near the parties' standard of living during the marriage." She also claims that the trial court's failure to award maintenance leaves Templin "a relative pauper."

Hyperbole aside, we are not persuaded that Templin is assured of the same standard of living after marriage that she enjoyed during marriage under the circumstances of this case.

*Marriage Duration*

As previously stated, the trial court found that the duration of the parties' marriage was 10 years. Given this, we reject Templin's attempt to use a later court order to undermine this finding.

The court entered that order almost two months after its findings of fact. We previously discussed this order in this opinion and why it has no effect on our analysis.

23

*Ability of Spouse from Whom Maintenance Is Sought*
*To Meet His Needs and Financial Obligations*
*While Meeting Those of the Spouse Seeking Maintenance*

Templin argues that Klavano could pay her maintenance and that the court "ignored [his] robust financial circumstances." Not so.

The trial court found that Klavano is "semi-retired and no longer receives W-2 wages." The trial court also found that Klavano "liv[es] off the income from his separate investments, and must use his separate capital to meet his living expenses . . . and separate financial obligations." Templin does not challenge these findings of fact. Thus, they are verities on appeal.[70]

Ultimately, the trial court found that Templin's reasonable monthly expenses required that Klavano provide Templin with half of "his retirement accounts prorated" during the 10 year marriage. This finding of fact shows that the trial court considered Klavano's ability to meet his financial obligations while meeting some of Templin's needs.

Templin also assigns error to portions of the findings relating to the court's application of the RCW 26.09.090 maintenance factors. But she fails to argue all of them. To the extent not argued, we deem these assignments abandoned.[71]

In sum, the trial court explicitly considered and properly applied the statutory maintenance factors. Although the record indicated a disparity in the parties' earnings, substantial evidence supported the trial court's findings. These findings, in turn, support the conclusion that no maintenance should be awarded.

---

[70] Mueller, 185 Wn.2d at 9.

[71] Kinderace LLC, 2016 WL 3660798, at *1 n.1.

24

The trial court's decision is not manifestly unreasonable.

## CROSS APPEAL

### Postnuptial Agreement

In his cross appeal, Klavano argues that the trial court erred in concluding that the parties' postnuptial agreement was unfair and unenforceable. This argument is without merit.

Postnuptial agreements are agreements spouses enter into during marriage "to define each spouse's property rights in the event of death or divorce."[72] These agreements are valid if the spouse seeking enforcement fully discloses the amount, character, and value of the property involved.[73] The other spouse must also enter into the agreement fully and voluntarily, on independent advice, and with full knowledge of his or her rights.[74]

Here, the parties executed a postnuptial agreement on October 3, 2003, which focused on the home they were soon to purchase. The face of the document reflects that it was faxed on October 3, 2003, the date the parties signed it. It bears at the top of the first page the notation "Law Offices."[75]

Templin testified at trial that she was scared and felt forced to sign the agreement the same day Klavano presented it to her. She also testified that

---

[72] BLACK'S LAW DICTIONARY 1356 (10th ed. 2014).

[73] In re Marriage of Hadley, 88 Wn.2d 649, 654, 565 P.2d 790 (1977).

[74] Id.

[75] Trial Exhibit 213.

Klavano did not give her time to have an attorney look at the agreement on her behalf and that she did not understand the ramifications of the agreement.

In contrast, Klavano testified that Templin "was fine" with the agreement, "was happy," and *could* have gone to an attorney of her choice. The trial court was not required to accept this testimony as credible. It clearly rejected this evidence, as it was entitled to do.

Because this court does "not decide the credibility of witnesses or [re]weigh the evidence" on appeal, the evidence we just discussed constitutes substantial evidence supporting the trial court's finding.[76] And that finding supports the trial court's conclusion that the post-nuptial agreement was invalid.

We note that the agreement states that each party had the opportunity to consult with counsel. Presumably, this was language inserted into the document by a lawyer at the "Law Offices" which faxed the document. We doubt this law office was one representing Templin's interests, given her testimony that she did not understand the ramifications of the agreement. In our view, this further supports the trial court's determination that the agreement was unenforceable under the circumstances of this case.

Klavano claims that the trial court erred because the agreement makes a fair and reasonable provision for Templin. This argument ignores the basic rule that an agreement executed under the circumstances of this case is not enforceable. It simply does not matter whether its provisions are reasonable, an issue we need not decide.

---

[76] In re Marriage of A.W., 182 Wn.2d at 711.

*Community Property*

Klavano also argues that the trial court improperly characterized certain property as community property. He focuses on the court's characterization of the family home as community property. He makes a similar argument about the $142,173 down payment made to refinance the loan to acquire the family home. We reject both claims.

"'[A]ll property acquired during marriage is presumptively community property, regardless of how title is held.'"[77] The party challenging an asset's community property status bears the burden of rebutting this presumption, which "'can be overcome only by clear and convincing proof'" that the property is separate property.[78] This standard requires "positive evidence, direct or circumstantial, that makes a proposition highly probable."[79]

For example, the challenging party may satisfy its burden by demonstrating that separate funds were used to purchase the property and by tracing these funds "'with some degree of particularity.'"[80] Thus, the property owner's self-serving testimony regarding the allegedly separate property is not enough.[81]

---

[77] In re Marriage of Kile, 186 Wn. App. at 876 (quoting Dean v. Lehman, 143 Wn.2d 12, 19, 18 P.3d 523 (2001)).

[78] Id. (quoting Dean, 143 Wn.2d at 19-20).

[79] In re Marriage of Schwarz, 192 Wn. App. 180, 218, 368 P.3d 173 (2016).

[80] Id. at 189 (quoting Berol v. Berol, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950)).

[81] Id. at 218; Berol, 37 Wn.2d at 382.

Here, Klavano made the down payment for the parties' residence from separate funds a few months after the parties' marriage. The trial court characterized the family home as community property, less Klavano's down payment from separate funds. Thereafter, the trial court awarded Templin 50 percent of the equity remaining after subtracting the debt against the home.

In 2013, the parties refinanced the home, and Klavano paid a $142,173 down payment to refinance the loan against the home.

Klavano assigns error to the trial court's characterization of the residence as community property, claiming it is his separate property. This claim has no merit. The home was acquired during the parties' marriage and thus is presumptively community property. Moreover, the trial court gave Klavano credit for traceable separate funds used in the down payment of this presumptively community asset.

As for Klavano's assertion concerning the characterization of his payment for refinancing the property in 2013, he also fails to show that the property was separate. The court made the unchallenged factual finding that Klavano made gifts to the community from this separate property. The trial court was entitled to decide that these funds fell within the scope of a gift to the community. The court's characterization is correct.

Klavano cites In re Marriage of Zahm[82] to support his argument, where the supreme court discusses the "mortgage rule." The supreme court stated that the

---

[82] 138 Wn.2d 213, 224, 978 P.2d 498 (1999).

28

mortgage rule "is a legal tool used to characterize property acquired, using both community and separate funds, over a period of time."[83]

That case does not alter the proper analysis. Specifically, it does not overcome the trial court's unchallenged finding that Klavano generally gifted separate property to the community.

### Intransigence

Klavano argues that the trial court abused its discretion in failing to award him attorney fees he incurred due to alleged intransigence. We hold that he has failed in his burden to show the court abused its discretion in any respect.

A party's intransigence is an equitable basis for awarding attorney fees.[84] Courts grant attorney fee awards for intransigence when a party engages in "'foot-dragging' and 'obstruction' . . . or simply when one party made the trial unduly difficult and increased legal costs by his or her actions.'"[85] Intransigence may also be shown by "'litigious behavior, bringing excessive motions, or discovery abuses.'"[86]

Additionally, courts consider "'the extent to which one spouse's intransigence caused the [other] spouse . . . to require additional legal

---

[83] Id.

[84] In re Marriage of Chandola, 180 Wn.2d at 656.

[85] Id. at 657 (alteration in original) (internal quotation marks omitted) (quoting In re Marriage of Katare, 175 Wn.2d 23, 42, 283 P.3d 546 (2012)).

[86] In re Matter of Kelly, 170 Wn. App. 722, 740, 287 P.3d 12 (2012) (quoting In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002)).

services.'"[87] The court can also determine whether one party's conduct "appear[ed] to handicap [the other party] in any significant way."[88] "'If intransigence is established, [the court] need not consider the parties' resources.'"[89]

But a highly contested dissolution action, without evidence of difficult conduct, does not justify an award of fees for intransigence.[90]

Here, Klavano fails to show that the court's decision not to award fees based on intransigence was an abuse of discretion. His arguments all relate to discovery disputes. And such disputes are best handled by the trial court. We will not second guess a trial court in such matters.

We have carefully examined the record and the arguments. We conclude there was no abuse of discretion in declining to award fees to Klavano based on intransigence.

## ATTORNEY FEES

*Trial*

Templin argues that the trial court abused its discretion in declining to award her attorney fees at trial. We agree.

---

[87] In re Marriage of Williams, 84 Wn. App. 263, 272, 927 P.2d 679 (1996) (quoting In re Marriage of Crosetto, 82 Wn. App. at 563).

[88] Id. at 273.

[89] In re Marriage of Larson, 178 Wn. App. at 146 (quoting In re Marriage of Wallace, 111 Wn. App. at 710).

[90] See In re Marriage of Wright, 78 Wn. App. 230, 239, 896 P.2d 735 (1995).

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity."[91] RCW 26.09.140 provides for attorney fees in dissolution proceedings.

The legislature has made clear that a court may order a party to pay for other party's reasonable attorney fees for "maintaining or defending any proceeding under this chapter" after considering the parties' financial resources.[92] And case law makes clear that an award of attorney fees under this statute "'*must* be based upon a consideration that balances the needs of the spouse seeking fees against the'" other spouse's ability to pay.[93] "A lack of findings as to either need or ability to pay requires reversal."[94]

Here, the findings, conclusions, and decree show that the trial court denied an award of attorney fees to Templin without considering either her need or Klavano's ability to pay. Moreover, its order denying Templin's motion for reconsideration regarding attorney fees also lacks such consideration. These are errors. We must reverse and remand for reconsideration of the fee issue in accordance with the controlling criteria of RCW 26.09.140.

---

[91] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[92] RCW 26.09.140.

[93] In re Marriage of Urbana, 147 Wn. App. at 16 (emphasis added) (quoting In re Marriage of Moody, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999)).

[94] In re Marriage of Scanlon, 109 Wn. App. 167, 181, 34 P.3d 877 (2001).

*Appeal*

Both parties request attorney fees on appeal. Templin seeks fees under RCW 26.09.140, claiming that she has need and that Klavano has the ability to pay. Klavano argues that Templin's appeal is frivolous in an attempt to avoid the award of reasonable attorney fees on appeal to her.

Templin's most recent financial declaration demonstrates her need for an award of reasonable attorney fees on appeal. Klavano's most recent financial declaration demonstrates his ability to pay Templin's reasonable attorney fees. Accordingly, we award her reasonable attorney fees on appeal. The amount of such fees and expenses on appeal shall be determined by the trial court on remand.[95]

RAP 18.9(a) provides for attorney fees if a party "files a frivolous appeal." "An appeal is not frivolous or brought for purposes of delay if it involves 'debatable issues upon which reasonable minds might differ.'"[96] "'An appeal that is affirmed merely because the arguments are rejected is not frivolous.'"[97]

Based on the above considerations, we deny Klavano any award of attorney fees on appeal. This appeal is not frivolous.

We affirm the decree of dissolution in all respects, except for the denial of Templin's request for reasonable attorney fees at trial. We remand for

---

[95] RAP 18.1(i) and the other Rules of Appellate Procedure.

[96] O'Neill v. City of Shoreline, 183 Wn. App. 15, 26, 332 P.3d 1099 (2014) (internal quotation marks omitted) (quoting Olsen Media v. Energy Sciences, Inc., 32 Wn. App. 579, 588, 648 P.2d 493 (1982)).

[97] Ensley v. Mollmann, 155 Wn. App. 744, 760, 230 P.3d 599 (2010) (quoting Halvorsen v. Ferguson, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)).

reconsideration of that question based on the standard under RCW 26.09.140.

We award reasonable attorney fees and expenses on appeal to Templin. The

trial court shall determine the amount of such fees and expenses on remand.

_Cox, J._

WE CONCUR:

_Trickey, ACJ_          _Leach, J._