# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re Marriage of: | ) | NO. 69833-8-I |
| | ) | |
| CHRISTOPHER ROSS LARSON, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JULIA LARSON CALHOUN, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: November 25, 2013 |

LAU, J. — This case requires us to determine whether a trial court's authority to award one spouse's separate property to the other spouse in a dissolution action is limited to circumstances where a spouse cannot be amply provided for from community property alone. We conclude that RCW 26.09.080 does not single out the property's character or any other factor to be given more weight. This statute and controlling case authority direct the trial court to make a fair and equitable property division after weighing all relevant factors within the context of the parties' specific circumstances. Because the trial court properly exercised its discretion when it applied this rule to determine a fair and equitable property division, we affirm.

## FACTS

Before marrying Julia Calhoun in 1986, Christopher Larson acquired an equity interest in a young company called Microsoft.[1] This interest developed into a colossal fortune, which Larson held principally as his separate property. The marital community also amassed considerable wealth, traceable largely to Microsoft stock options exercised by Larson during the marriage. Larson treated all purchased stock as a community asset, thereby relinquishing any claim to the separate property portion of the asset.[2]

During this long-term marriage, Calhoun "made a major contribution to all that the community accomplished, measured in terms of their children, their foster children, their impact in the broad community and their more narrow business interests." The trial court found that "the marital community benefitted greatly from [Calhoun] serving as, in her phrase, the 'approachable face' of the couple."

Following a three-week trial, the court entered detailed findings of fact and conclusions of law, identified the couple's assets and liabilities, determined their value, characterized each as separate or community, and directed a fair and equitable division. The court awarded Calhoun various community assets worth approximately $139 million. Larson assumed a net community obligation of approximately $29.5 million. Calhoun retained separate property worth $669,000. She assumed no community debt.

---

[1] Larson worked part-time for Microsoft in 1975, in association with Bill Gates. Upon graduation from college in 1981, he worked full-time until he retired in 2001.

[2] See In re Marriage of Short, 125 Wn.2d 865, 890 P.2d 12 (1995).

Citing its "broad equitable powers" to "make a lopsided division of community assets and also invade a separate estate to the extent necessary to achieve a just result," the court also awarded Calhoun more than $40 million dollars of Larson's separate property. To effectuate this award, it ordered Larson to transfer shares of Microsoft stock, valued at approximately $14 million,[3] and to make three cash installment payments totaling $27 million.

Larson ultimately retained separate assets worth approximately $357 million. His combined award totaled approximately $327 million dollars. Calhoun's combined award totaled approximately $181 million. Larson appeals the award of a portion of his separate property to Calhoun.

## ANALYSIS

Larson challenges the trial court's decision to award approximately $40 million of his separate property to Calhoun. He asserts no challenge to the court's decision to award Calhoun 100 percent of the net community estate or to the court's valuation or characterization of the parties' property. He acknowledges, "[T]his is not a factual appeal." Br. of Appellant at 4.

Larson contends that the trial court "applied an improper legal standard and consequently abused its discretion in awarding Calhoun a significant share of [his] separate estate in addition to the net value of all the community property, because more than ample provision could have been made for Calhoun from the parties' $109 million net community estate." Br. of Appellant at 4-5. He argues that we should "reverse the

---

[3] Posttrial, the parties agreed to sell the Microsoft stock for tax purposes and to transfer the cash proceeds to Calhoun.

trial court's distribution of the marital estate and direct the trial court on remand to limit its award to the wife to the net value of the community estate." Br. of Appellant at 42.

In a dissolution action, the trial court must order a "just and equitable" distribution of the parties' property and liabilities, whether community or separate. RCW 26.09.080. All property is before the court for distribution. Farmer v. Farmer, 172 Wn.2d 616, 625, 259 P.3d 256 (2011). When fashioning just and equitable relief, the court must consider (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the property distribution is to become effective. RCW 26.09.080. These factors are not exclusive. The statute requires the court to consider all "relevant factors." RCW 26.09.080.

The court has "broad discretion" to determine what is just and equitable based on the circumstances of each case. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). A just and equitable division "does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). "Fairness is attained by considering all circumstances of the marriage and by exercising discretion, not by utilizing inflexible rules." In re Marriage of Tower, 55 Wn. App. 697, 700, 780 P.2d 863 (1989). "Just and equitable distribution does not mean that the court must make an equal distribution." In re Marriage of DewBerry, 115 Wn. App. 351, 366, 62 P.3d 525 (2003). "Under appropriate circumstances . . . [the trial court] need not award separate

property to its owner." In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001).

The trial court is in the best position to decide issues of fairness. Brewer v. Brewer, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Accordingly, "[a] property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

> A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.
> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997) (citation omitted). "Trial court decisions in dissolution proceedings will seldom be changed on appeal." In re Marriage of Stenshoel, 72 Wn. App. 800, 803, 866 P.2d 635 (1993).

Larson contends that while the trial court generally has broad discretion to order a just and equitable distribution under RCW 26.09.080, Washington law prohibits the award of separate property to the nonowning spouse if "ample provision for the [nonowning] spouse can be made from the community estate alone."[4] Br. of Appellant at 21. As discussed below, controlling Washington law imposes no such restriction on the trial court's broad discretion to make a fair and equitable property distribution.

---

[4] Larson earlier argued in his statement of grounds for direct review that our Supreme Court should limit the award of separate property of one spouse to another except in exceptional circumstances. He does not make this claim on appeal.

Larson relies on several cases but principally on Holm v. Holm, 27 Wn.2d 456, 178 P.2d 725 (1947), to support his contention. In Holm, the trial court awarded the wife half of the parties' community property (worth $269,397.66) and half of the husband's separate assets (worth $72,836.01). On appeal, the husband argued the distribution was inequitable because it failed to account for the character of the property. The Supreme Court reversed the separate property award, reasoning in part that the wife could be "amply provided for out of the community property, without invading the separate property of the appellant." Holm, 27 Wn.2d at 466. It explained, "This is not a case where, in order to make adequate provision for the necessitous condition of the wife, the court is constrained to take from the husband his separate property." Holm, 27 Wn.2d at 465. It then concluded, "We consider the division made by the trial court unjust and inequitable in so far as it awarded to the respondent a portion of what was appellant's separate property." Holm, 27 Wn.2d at 466.

Larson thus argues, "[A]n award to the wife [Calhoun] of more than $100 million in community property meets the threshold of 'ample provision' that prohibits invasion of the husband's separate estate."[5] Br. of Appellant at 42. Holm is unpersuasive. To the extent the above quoted language in Holm constitutes a holding, this approach was rejected in Konzen v. Konzen, 103 Wn.2d 470, 693 P.2d 97 (1985).

In Konzen, the trial court awarded 30 percent of the husband's separate military pension to the wife to help maintain liquidity. Konzen, 103 Wn.2d at 472. It also ordered an equal division of the parties' community property. On appeal, the husband

---

[5] Larson claims, "[A]n award of 100% of the value of the community estate to the wife, debt-free, would have generated income for her of at least $2,196,000 a year, without invasion of principal." Br. of Appellant at 34. The court made no such finding.

challenged the award of his separate property. He relied on Bodine v. Bodine, 34

Wn.2d 33, 207 P.2d 1213 (1949), a case predating the enactment of RCW 26.09.080.

In Bodine, the court stated, "[W]hile the superior court may, under certain

circumstances, award part or all of one spouse's separate property to the other, the

situations which warrant such action are exceptional." Bodine, 34 Wn.2d at 35.

Konzen leaves no doubt that separate property is no longer entitled to special

treatment. It noted that when Bodine was decided, "courts were free to weigh the

character of the property more heavily than other factors when allocating separate

property."[6] Konzen, 103 Wn.2d at 477. Unlike its predecessors, RCW 26.09.080,

enacted in 1973, "specifically applies the statutory criteria to separate property."

Konzen, 103 Wn.2d at 477. The court concluded:

> This court will not single out a particular factor, such as the character of the property, and require as a matter of law that it be given greater weight than other relevant factors. The statute [RCW 26.09.080] directs the trial court to weigh all of the factors, within the context of the particular circumstances of the parties, to come to a fair, just and equitable division of property. The character of the property is a relevant factor which must be considered, but is not controlling.

Konzen, 103 Wn.2d at 478 (emphasis added).

In In re Marriage of Griswold, 112 Wn. App. 333, 48 P.3d 1018 (2002), Division

Three of this court addressed the husband's claim that the trial court abused its

discretion when it awarded $138,000 of his separate property to the wife without finding

---

[6] Holm and Bodine relied on Remington's Revised Statutes § 989, which provided, "In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage."

"unusual or exceptional circumstances." Griswold, 112 Wn. App. at 347. Rejecting

Bodine and the cases following it, the court reasoned:

> [N]one of these cases acknowledges that in the same year the court decided Bodine, the Legislature revised the dissolution statute, listing the specific factors to be considered. See Laws of 1949, ch. 215, § 11. The revision modified the principle that one factor should weigh more heavily than others:
>
> . . . .
> Under Konzen, a court need not find exceptional circumstances to justify awarding a portion of one spouse's separate [property] to the other spouse. The trial court here thus did not abuse its discretion by failing to find there were exceptional circumstances.

Griswold, 112 Wn. App. at 347-48.

Larson also contends that Washington courts applying RCW 26.09.080 and

Konzen continue to award separate property to the nonowning spouse only when

necessary to prevent the nonowning spouse from "falling into poverty." Br. of Appellant

at 28 (formatting omitted). He relies on Griswold, In re Marriage of Williams, 84 Wn.

App. 263, 927 P.2d 679 (1996), and Bulicek v. Bulicek, 59 Wn. App. 630, 800 P.2d 394

(1990), among others, to support this contention.[7] In each case, the wife earned less

than her husband earned or had lesser earning potential. In each case, the court

upheld the distribution of the husband's separate property. Griswold, Williams, and

---

[7] Larson also cites Oestreich v. Oestreich, 2 Wn.2d 72, 97 P.2d 655 (1939), to support his claim that the trial court is allowed to award one spouse's separate property to prevent impoverishing the other. Oestreich is not applicable because the court reasoned that the trial court was free to award all separate and community property to the wife if justified by the circumstances, regardless of her financial circumstances. Larson's reliance on Luithle v. Luithle, 23 Wn.2d 494, 161 P.2d 152 (1945), is also not applicable. There, the court took into account the wife's permanent loss of her monthly social security benefit on marriage in concluding this loss counterbalanced the separate property award. The key consideration in affirming this award was the wife's necessitous condition and the husband's financial ability.

Bulicek do not establish a rule that poverty or "necessitous circumstances" alone justify the award of separate property to the nonowning spouse.[8]

In Griswold, discussed above, the court relied on Konzen to hold that the trial court properly declined to find exceptional circumstances existed because it was not required to do so. The court concluded the trial court properly weighed all the facts to determine the distribution was just and equitable.

In Williams, the husband contended, among other issues, that the trial court improperly based the maintenance award on retirement benefits not then accessible and that included four years of his premarital military service. Division Three of this court affirmed, acknowledging that four years of premarital military benefits were, "strictly speaking, [the husband's] separate property." Williams, 84 Wn. App. at 269. Nevertheless, it held, "[T]he status of property as community or separate is not controlling . . . . [T]he ultimate question is whether, under the circumstances, the award is just." Williams, 84 Wn. App. at 269 (citing in part RCW 26.09.080).

In Bulicek, the husband contended that the trial court's pension formula improperly allowed the wife to share in his postseparation contributions to the plan. We observed, "The result is that [the wife] will in effect receive a portion of the postdissolution retirement contributions, which are [the husband's] separate property." Bulicek, 59 Wn. App. at 636. Affirming the trial court's pension formula, we reiterated the RCW 26.09.080 factors that the trial court is required to consider when making a just and equitable disposition of marital property. We stated:

---

[8] We are likewise unpersuaded by Larson's reliance on case authority from Wisconsin, Minnesota, Alaska, and Mississippi. As discussed above, RCW 26.09.080 and Konzen control.

> We acknowledge that [the husband's] retirement fund may receive proportionately higher future contributions based upon his career longevity and anticipated increases in annual pay. We further acknowledge that the formula utilized for division of future retirement benefits could result in [the wife's] sharing in those increases. However, far from condemning this apportionment method, we specifically approve it as a means of recognizing the community contribution to such increases.

Bulicek, 59 Wn. App. at 638-39.

Larson also relies on Stokes v. Polley, 145 Wn.2d 341, 37 P.3d 1211 (2001), a quiet title and partition action involving the disputed meaning of a term in a dissolution decree. Unlike the present case, Stokes involved no dispute regarding an award of separate property to the non-owning spouse upon the dissolution of marriage. Nevertheless, Larson points to the court's passing comment that "Washington courts refrain from awarding separate property of one spouse to the other if a just and equitable division is possible without doing so." Stokes, 145 Wn.2d at 347. Larson mistakenly characterizes this bare statement as a binding "limitation on the trial court's authority to invade separate property . . . ." Br. of Appellant at 26. As discussed above, Konzen controls this issue. We are not free to ignore binding Washington Supreme Court precedent and we err when we disregard it. See 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 578, 146 P.3d 423 (2006) (Washington Supreme Court decisions are binding on all lower courts in the state); State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003) (the Washington Supreme Court has the ultimate authority to say what a statute means).

We conclude the trial court acted well within its broad discretion by awarding Calhoun approximately $40 million of Larson's separate property. During a three-week trial, the court "listened closely to the testimony of the parties and ten additional

witnesses," "reviewed the exhibits admitted into evidence as well as extensive legal briefing," and "heard closing arguments of counsel." Following trial, the trial judge issued 25 pages of carefully-drafted findings of fact and conclusions of law. It later issued 16 additional pages of amended findings and conclusions to reflect certain posttrial agreements. The record supports Calhoun's correct assertion that "[t]he trial court, an experienced trial judge, did not make a capricious decision." Resp't's Br. at 10.

The court recognized the unique (and possibly incomparable) nature of the case before it. It stated, "To first address the 'elephant in the ballroom', this is not a case like so many others where the concern is with making sure all in the family are housed, clothed and fed." It recognized that Larson "leaves the marriage in excellent fiscal and physical health," and that Calhoun's "fiscal and physical conditions are likewise strong." It also noted, "Both of these impressive people will go on to do well and to do good."

The court found it necessary to award a portion of Larson's separate estate to Calhoun "to achieve a just result." According to the trial court, the separate property award served two objectives. First, it recognized Calhoun's intangible contributions to the marital community. The court explained, "This was, after all, a long-term marriage in which the wife made a major contribution to all that the community accomplished, measured in terms of their children, their foster children, their impact in the broad community and their more narrow business interests." It found that the marital community benefited from Calhoun's engagement with the community at large:

> During her marriage, [Calhoun] was active as a parent, foster parent, overseer of major construction projects and the generous and committed benefactor of numerous charitable organizations. Both the community at large and the marital

community benefitted greatly from her serving as, in her phrase, the "approachable face" of the couple.

In other words, while Larson generated the couple's considerable wealth, Calhoun's intangible contributions served equally to benefit the marital community.

Second, the award helped ensure Calhoun's short- and long-term financial security. The court found that Calhoun held a college degree in English literature but was not "gainfully employed" during the marriage. Larson, in contrast, obtained significant employment and investment experience during the marriage. The court found he had a "keen business sense" and that, "[i]n recent years, he has stayed busy actively managing his extensive investments and philanthropic endeavors." As between the two, Larson was in a better position to acquire and manage future wealth. The court stated, "It is not that [Calhoun] leaves the marriage in need but the fact is she will leave the marriage in a less advantageous position than her husband."[9] The $40 million separate property award—consisting of Microsoft stock and cash—provided Calhoun with immediate liquidity. Meanwhile, the $139 million community property award—consisting largely of real property and fine artwork—helped guarantee Calhoun's long-term financial health. The court found, "The division to be effectuated will provide the wife with substantial earning capacity, moderate liquidity and assets that can be liquidated prudently as time goes by."

The trial court provided ample, tenable justifications for its decision to award a portion of Larson's separate estate to Calhoun. Its decision fell well within "the range of acceptable choices, given the facts and the applicable legal standard." Littlefield, 133

---

[9] Although Larson assigns error to this finding, he does not contend that the finding is unsupported by substantial evidence.

Wn.2d at 47. It properly characterized all separate and community property and made a just and equitable distribution of the marital property in accordance with RCW 26.09.080. Finding no abuse of discretion, we affirm the trial court's property distribution and its decree of dissolution.[10]

## ATTORNEY FEES ON APPEAL

"Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140. "As an independent ground we may award attorney fees and costs based on intransigence of a party, demonstrated by litigious behavior, bringing excessive motions, or discovery abuses." In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). "If intransigence is established, we need not consider the parties' resources." Wallace, 111 Wn. App. at 710.

Calhoun contends she is "entitled to her fees on appeal due to Larson's intransigent conduct."[11] Resp't's Br. at 42. She does not argue that Larson was intransigent below.[12] Instead, she contends that Larson's appeal constitutes intransigence justifying a fee award. She explains:

---

[10] Given our disposition in this case, we do not address Calhoun's invited error claim.

[11] Calhoun states, "While RCW 26.09.140 provides that a party in a dissolution action may recover his or her attorney fees on appeal, the statute is not the basis for Calhoun's fee request. Rather, she is entitled to her fees on appeal due to Larson's intransigent conduct." Resp't's Br. at 42.

[12] The trial court did not find that Larson was intransigent. To the contrary, it described the parties as "more congenial . . . than is typical." It also stated, "To the credit of both the parties and their counsel, many potentially thorny points of contention have been agreed upon."

> In this case, there was no need for this appeal. . . .
> . . . . An experienced trial judge ruled in Larson's favor on the legal issue of the characterization of the marital property after a 3-plus week trial. The court then made a discretionary decision to allocate the spouses' property on a 65-35 basis <u>that favored Larson</u>. That should have been the end of this case. But Larson could not stand the fact that his ex-wife received that allocation of marital property and he pursued this needless appeal, seeking to overturn established precedent.

Resp't's Br. at 42-43. She concludes, "Larson's appeal is motivated by self-interest and spite." Resp't's Br. at 43-44.

"Intransigence is the quality or state of being uncompromising." <u>In re Marriage of Schumacher</u>, 100 Wn. App. 208, 216, 997 P.2d 399 (2000); <u>see, e.g.</u>, <u>In re Marriage of Foley</u>, 84 Wn. App. 839, 846, 930 P.2d 929 (1997) (appellant filed "numerous frivolous motions," refused to show up for his deposition, and refused to read correspondence from the opposing party's attorney); <u>see also</u> <u>Eide v. Eide</u>, 1 Wn. App. 440, 462 P.2d 562 (1969) (appellant tampered with exhibits). Finding no intransigent conduct by Larson, we deny Calhoun's fee request.[13]

## CONCLUSION

Because the record shows no abuse of trial court discretion, we affirm the decree of dissolution. Calhoun's attorney fees request is denied.

WE CONCUR:

---

[13] Calhoun does not contend that Larson filed a "frivolous appeal" within the meaning of RAP 18.9(a).