IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 33720-1-III |
| | ) | |
| SHELLEY RENEE WILLSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ROY CHARLES WILLSON, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Shelley Willson and Roy Willson[1] separated in 2014 after 22 years of marriage. Following trial, Roy was awarded 53 percent of the community property and 60 percent of the total property, with the remaining 47 percent and 40 percent respectively awarded to Shelley. We affirm.

FACTS

Roy and Shelley were married in September 1991 and separated in March 2014. Roy was 62 years of age at the time of the dissolution trial and Shelley was 54.

---

[1] As the parties share a last name for the purposes of this appeal, their first names are used for clarity and readability. No disrespect is intended by doing so.

Roy retired from law enforcement in 2003 and receives a pension. His gross monthly income from the pension plan is $6,817.45, with a net monthly income of $5,505.39. Roy's prior employer covers his health insurance premiums and out-of-pocket medical costs excluding dental, vision, and hearing. There is no evidence in the record regarding the value of these benefits. Roy is not eligible to receive social security benefits by virtue of being a member of this pension plan. Roy presented expert testimony that valued the social security benefits he would have received, but is not entitled to draw, at $183,620.00. Shelley presented expert testimony that valued these social security benefits at $162,000.00. Roy also has several health issues including a form of leukemia, a heart condition, and posttraumatic stress disorder. He has received medical treatment to manage these issues over the past 10 years and has been able to live an active lifestyle during his retirement. Roy testified his illnesses do not prevent him from seeking employment.

Shelley has a general studies degree from Washington State University and a two-year civil engineering technology degree from Yakima Valley Community College. She began municipal employment in 1984, working as a traffic technician. Over the years, Shelley worked her way up the ranks of city employment and in 2013 she was appointed as the city wastewater treatment plant manager. Shelley resigned her position as

2

wastewater manager in October 2014, while the dissolution action was pending, and received unemployment benefits that were set to expire in the summer of 2015.

Shelley had been looking for work since 2014 but had not found new employment by the time of trial. According to Shelley, it was difficult for her to find comparable work to the wastewater manager position because she lacked certain engineering certification and licensure requirements.

Roy and Shelley's home was built on land that originally belonged to Shelley's family. In 2003, the home was converted to community property via a quit claim deed. During the marriage, a number of improvements had been made to the home, with some of the labor provided by Roy. There was no testimony at trial regarding whether these improvements increased the value of the home. A realtor at trial testified the value of the home was approximately $230,000.

The dissolution trial became very heated at times. Although the trial court instructed the parties not to talk about what caused the end of the marriage, both parties broached the subject. During pretrial hearings, Roy's counsel sought to explain, over an objection, that Shelley had voluntarily quit her job in order to avoid being fired for violating her employer's antifraternization policy. Shelley sought to introduce evidence that Roy had forced her to leave her job by threatening to expose her violation of the

antifraternization policy. Despite this allegation, Shelley did not dispute the characterization that she "voluntarily" quit her job. 1 Verbatim Report of Proceedings (VRP) (May 27, 2015) at 102; 3 VRP (May 29, 2015) at 210.

The trial court entered findings of fact and conclusions of law, dividing the assets between the parties. In its findings, the trial court noted it was "mindful" that Roy was reaching an age when people retire, his retirement was planned during the marriage, and that he had seven fewer years of earning capacity remaining than Shelley. Clerk's Papers (CP) at 112-13. While noting Roy "would be capable of some unknown type of employment," the court also stated the likelihood of Roy earning as much as Shelley in the immediate future was "slim." *Id.* As to Shelley, the court found it was "clear from the record she is capable of earning between $95,000 to $105,000 gross per year" plus her retirement benefits. *Id.* at 113. After corrections were made on reconsideration, Roy was awarded 53 percent of the community property and 60 percent of the total property. Roy's award included the marital home.

Shelley appeals.

## ANALYSIS

The trial court's findings and conclusions in support of a dissolution decree are entitled to great weight and will not be disturbed absent a manifest abuse of discretion.

4

*In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). A trial court is expected to make a just and equitable distribution of property, guided by the statutory factors set forth at RCW 26.09.080. To meet this objective, the court need not divide property equally. *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013). So long as a trial court's distribution decision falls within the guidelines set by our statutes and case law, it will be left undisturbed on appeal, even if the members of this court would have reached a different result in the first instance. *Id.* at 138-39; *Rockwell*, 141 Wn. App. at 242-43.

Shelley contends the trial court erred here for a number of reasons. She argues: (1) the trial court impermissibly injected fault into the proceedings by penalizing her for quitting her job, (2) the trial court erred in valuing Roy's pension, and (3) substantial evidence does not support the trial court's findings on a number of issues.

*Faulting Shelley for quitting her job*

Shelley's first argument is that the trial court impermissibly injected fault into the dissolution proceeding. Had this occurred, it would be error. Trial courts are required to make the aforementioned just and equitable distribution "without regard to misconduct." RCW 26.09.080. *See also In re Marriage of Muhammad*, 153 Wn.2d 795, 803-06, 108 P.3d 779 (2005) (trial court improperly weighed wife's decision to obtain a protective

order and faulted her for causing husband to lose his job).

Shelley claims the trial court impermissibly faulted her for quitting her job as the municipal wastewater treatment plant manager. We disagree. While the trial court expressed surprise that Shelley would voluntarily resign her lucrative position, it did not penalize her for this decision. This case did not involve child support or maintenance. There was no imputation of income for purposes of devising an award to Roy.[2] Instead, the trial court merely considered Shelley's admission that she voluntarily quit her job in order to assess whether she had the future capacity to earn a salary similar to the one she received from the city.[3] This was an appropriate consideration under RCW 26.09.080(4). *In re Marriage of Leland,* 69 Wn. App. 57, 72, 847 P.2d 518 (1993) (although earning capacity "is not a divisible asset . . . it is a factor to be considered when dividing the community and separate property in a dissolution proceeding").

Contrary to Shelley's assertions, the trial court appropriately restricted evidence regarding the reasons why Shelley resigned her employment. If the court had considered

---

[2] This case does not, therefore, raise the issue identified in *Muhammad* of a trial court altering its distribution of property to offset one spouse's voluntary unemployment. 153 Wn.2d at 804-05.

[3] Shelley claims the trial court faulted her for taking early retirement. However, at the time Shelley left her job, she had not yet decided whether to retire. She was still job searching.

Shelley's accusation that Roy blackmailed her into quitting her job, Roy's proffered evidence that Shelley could have received her job back would have become relevant. Shelley insisted that this evidence not come in. But Shelley cannot have it both ways. Both types of evidence either needed to be excluded or admitted. Given the prohibition on assessing fault, the trial court properly acted within its discretion in choosing the former option.

## Pension benefits

Following the procedure set up in *Rockwell*, the trial court removed the impact of social security benefits from the parties' future earning capacities by discounting the value of Roy's pension by the estimated amount he would have received in social security benefits but is not entitled to draw. 141 Wn. App. at 243-45. In so doing, the trial court accepted social security figures suggested by Shelley's expert, instead of Roy's. We discern no error in the court's *Rockwell* analysis.

Shelley argues the trial court should have factored in the value of Roy's health plan in determining his future pension earnings. However, no evidence was presented with respect to the value of Roy's health benefits. The record contains information about the value of Shelley's health benefits, but there is no evidence suggesting that Shelley and Roy's health benefits would be the same. Without any figures to work with, the trial

court's valuation of Roy's pension benefits was not erroneous.

*Substantial evidence*

Shelley argues that some of the trial court's findings of fact are not supported by substantial evidence. Each of her contentions is addressed in turn.

*Shelley's earning capacity*

Shelley first argues the trial court erred when it determined she was capable of earning between $95,000.00 and $105,000.00 gross per year, plus her pension benefits. We will defer to the trial court's findings, so long as they are "within the range of credible evidence." *Rockwell*, 141 Wn. App. at 248. The evidence at trial was that, during her last year of employment,[4] Shelley received a salary of $103,104.28.[5] Given this fact, at least some evidence supported the trial court's findings. We will not disturb this finding on appeal.

---

[4] Shelley contends the trial court erred by relying on her final year of pay, rather than an average of several years. None of the exhibits that Shelley used at trial to show her income prior to 2014 were included with the record on appeal. It is Shelley's burden to provide such documentation. Because she has not done so, we will not review this aspect of her arguments. *See Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998).

[5] Shelley resigned her position as wastewater treatment plant manager on October 24, 2014. As of that date, she earned a total of $138,123.86. This number includes a one-time payout for unused vacation and sick leave that was valued at $35,119.58. Thus, Shelley's actual earnings during 2014 were $103,104.28.

## Roy's health and employability

Shelley next argues that substantial evidence does not support the trial court's findings as to Roy's health and employability. Specifically, the trial court found Roy suffers from multiple health issues, which may become more severe, and that his chances for future employment are minimal.

The trial court's findings are supported by substantial evidence. Contrary to Shelley's assertions, there is no requirement for expert testimony regarding these issues. The trial court was entitled to rely on Roy's testimony. *See Rockwell*, 141 Wn. App. at 242. In addition, it was not unreasonable for the trial court to infer that Roy was not employable, particularly given that Roy's retirement had been planned during marriage and was in place for over a decade prior to dissolution.

## Increase in the value of the home

Shelley argues that Roy has not shown how the improvements he made to the home increased its value. However, she offers no legal argument as to why this matters. Roy was awarded the marital home, and the home was valued at $230,000 by a realtor who testified at trial. There is no indication in the record that Roy was awarded the home as compensation for separate funds he expended on repairs and improvements. Given the inadequate briefing and legal argument, we decline review of this issue. *See State v.*

9

No. 33720-1-III
*In re Marriage of Willson*

*Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993).

*Unequal property division*

Given the parties' disparity in age and earning capacity, the trial court did not abuse its discretion in dividing the community property unequally. *In re Marriage of Doneen*, 197 Wn. App. 941, 948-49, 391 P.3d 594 (2017). Shelley's assertions to the contrary are without merit.

## CONCLUSION

The trial court's order of dissolution is affirmed. Given Roy's substantial property award and monthly income, we deny his request for attorney fees. *In re Marriage of Wright*, 179 Wn. App. 257, 270, 319 P.3d 45 (2013).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, A.C.J.    Pennell, J.

10