# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>KARMELLE MARIE YERBURY,<br><br>                  Respondent.<br><br>  and<br><br>DAVID THOMAS YERBURY,<br><br>                  Appellant. | No.  59720-9-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

LEE, P.J. — David Yerbury appeals the trial court's final dissolution decree following remand proceedings held after we reversed and remanded a marital property distribution of a 60/40 split in favor of Karmelle Yerbury based on the trial court's consideration of non-existent assets. Specifically, David[1] argues that the trial court erred on remand when it used the same reasons to justify an even greater disparity in distribution of community assets in favor of Karmelle. David also argues that the trial court abused its discretion when it awarded Karmelle attorney fees on remand.

Because the trial court properly considered the statutory factors in its distribution of community assets and in its award of attorney fees on remand, the trial court did not abuse its discretion. We affirm.

---

[1] Because the parties have the same last name, this opinion will refer to them by their first names for clarity.  No disrespect is intended.

FACTS

A.    BACKGROUND

David and Karmelle began dating in 1987. They had two children together and then married in 1999. Prior to David and Karmelle's marriage, Karmelle worked for minimum wage at a diner until the birth of their first child in 1995. *Yerbury v. Yerbury*, No. 84637-0-I, slip op. at 2 (Wash. Ct. App. Jan. 17, 2023) (unpublished).[2,3] David and Karmelle agreed that Karmelle would stay home to take care of their children. *Id.*

David worked as a police officer for 14 years and later became the director of security at a casino. *Id.* David currently has a gross income of approximately $180,000 per year. David and Karmelle separated in 2008, but they maintained regular contact and daily family activities. *Id.* at 2 n.2. In 2008, David liquidated his police retirement account and invested $100,000 in Encore Development Group (Encore), which operated a nightclub. *Id.* at 3. According to Karmelle, she was unaware that David had liquidated his retirement account until three years after he had done so. *Id.* at 4.

Encore was profitable for some years, during which David received profit distributions, but Encore dissolved in 2017. *Id.* at 3. Additionally, during the marriage, and unbeknownst to Karmelle, David opened three bank accounts, each with several thousand dollars in deposits. *Id.*

---

[2] https://www.courts.wa.gov/opinions/pdf/846370.pdf.

[3] The parties do not dispute that detailed facts regarding David and Karmelle's dissolution may be found in their first appeal, *Yerbury*, No. 84637-0-I, slip op. at 2-7, which is also part of the record on this appeal. This opinion will reference *Yerbury* for facts pertinent to this appeal.

No. 59720-9-II

B.    PROCEDURAL HISTORY

    1.    Dissolution Trial and Appeal

Karmelle filed a dissolution petition in April 2019.[4]  *Id.* at 4.  The case proceeded to a three-day bench trial in November 2021.  *Id.*

In January 2022, the trial court entered findings and conclusions, along with a final dissolution decree (January 2022 dissolution decree).  The trial court found that David and Karmelle's marital community ended on October 3, 2018, and that neither spouse had separate property.  David and Karmelle's community property included their home in Puyallup, along with "Equity in Encore," Microsoft and Boeing stock, bank accounts (including those that David opened without Karmelle's knowledge), and three vehicles.  Clerk's Papers (CP) at 78.

The trial court ordered David to pay spousal support to Karmelle because she had "demonstrated a need for spousal maintenance and [David] ha[d] an ability to pay . . . . [Karmelle] has been a stay at home spouse for the duration of the marriage and [David] has been the primary wage earner.  [Karmelle] was out of the workforce prior to the marriage when the children were born."  CP at 79.  The trial court also found that Karmelle needed assistance to pay for attorney fees and that David had the ability to pay those fees.  As to the payment of those fees, the trial court found "that there were delays in the timely production of discovery information from [David] which increased the legal fees of [Karmelle]."  CP at 79.

---

[4] David had originally filed a dissolution petition in Puyallup Tribal Court in August 2018 and served Karmelle with the petition in October 2018.  *Yerbury*, No. 84637-0-I, slip op. at 4. However, the tribal court determined that it did not have jurisdiction over Karmelle and dismissed the action, which David did not ultimately pursue.  *Id.*

3

The trial court adopted an asset spreadsheet, which proposed a 60/40 split of community assets in favor of Karmelle. The spreadsheet awarded Karmelle the family home, valued at $365,000, and one of the vehicles, valued at $1,813. The spreadsheet allocated the equity in Encore (valued at $103,625), the bank accounts (valued at $78,659), and proceeds of the Microsoft stock (valued at $31,518) to David. The Boeing stock value was "unknown" and the trial court directed David to coordinate with Karmelle to discover the location of those shares and their value, after which Karmelle would be awarded 60% of their value. CP at 84.

The January 2022 dissolution decree also awarded spousal support to Karmelle for eight years between October 2018 and October 2026. The trial court ordered that beginning December 1, 2021, David "shall pay [Karmelle] $6,000.00 per month in one lump sum payment. Starting on October 1, 2024[,] the monthly amount shall be reduced to $4,000.00 per month. Starting on October 1, 2025, the monthly amount shall be reduced to $3,000.00 per month."[5] CP at 85-86. Additionally, the trial court ordered David to pay Karmelle $30,000 in attorney fees. Finally, the January 2022 dissolution decree stated: "The court is reserving the distribution of any asset that was not disclosed and/or divided. Division of that asset shall be proportional with [Karmelle] receiving 60% and [David] receiving 40%." CP at 87.

David appealed the January 2022 dissolution decree to this court. *Yerbury*, No. 84637-0-I, slip op. at 7. He argued that the trial court erred when it included "equity in Encore as an asset when it no longer existed at the date of separation or at the time of trial," and when it "valu[ed] the bank accounts higher than their values at the date of separation without providing any grounds

---

[5] The maintenance award between October 2018 and November 2021 was governed by a temporary order that is not part of the record in this appeal.

for doing so." *Id.* We determined that, based on the record, Encore no longer existed as an asset and the trial court abused its discretion by incorporating it into the property distribution. *Id.* at 9. We also held that the trial court erroneously valued the bank accounts higher than it should have. *Id.* at 10.

We concluded:

> Because the court's consideration of nonexistent assets influenced all aspects of its asset distribution, we reverse the decree as to all asset distribution [sic] and remand for reconsideration based [on] only those assets held at the time of the dissolution. Should any distribution be based on disputed facts, the court should make the necessary findings in its redetermination of what is a just and equitable distribution.

*Id.* at 16-17 (footnote omitted).

During the first appeal, David sought a partial stay of the January 2022 dissolution decree. Specifically, he sought a stay of parts 2 and 7 of the January 2022 dissolution decree, which pertained only to the award of the family home to Karmelle, pending the appeal. The trial court agreed and required David to post a $35,000 supersedeas bond. David apparently did not seek a stay on other aspects of the January 2022 dissolution decree pending the appeal.[6]

In February 2022, Karmelle filed a motion for contempt, alleging that David was failing to make spousal maintenance payments in a lump sum as required by the January 2022 dissolution decree. In March 2022, the trial court entered a contempt order against David for past due spousal support, attorney fees, and a $100 penalty. Following the contempt order, Karmelle filed a motion

---

[6] According to David, the trial court "denied his repeated requests to stay the [January 2022] final [dissolution decree] pending a final decision." CP at 130. However, other than the notice of partial cash supersedeas, which sought a stay of parts 2 and 7 of the January 2022 dissolution decree, the record is devoid of any other requests David allegedly made to stay the entire January 2022 dissolution decree.

to enforce the January 2022 dissolution decree, which the trial court granted in April 2022. The trial court subsequently entered several orders on review sanctioning David for non-compliance.[7]

2.      Remand Proceedings

The trial court held three hearings on remand in June and October 2023. Both David and Karmelle filed motions and memorandums relating to the division of community property pursuant to the remand order from this court.

In her motion, Karmelle requested "a large disproportionate division of assets because it is fair and equitable given the length of marriage and financial position of the parties and because it accounts for the negatively productive conduct of [David] through the marriage and his secreting of financial accounts." CP at 114. Karmelle proposed a revised spreadsheet that was largely the same as the one the trial court had adopted with the January 2022 dissolution decree, with two exceptions: first, Karmelle removed the Encore equity and updated the values of the bank accounts; and second, she added a line item of approximately $6200 of "Unclaimed Property" discovered after entry of the January 2022 dissolution decree. CP at 127. The unclaimed property appeared to primarily be composed of stock dividends that David allegedly allowed "to be escheated to the State." Verbatim Rep. of Proc. (VRP) (June 30, 2023) at 28. Karmelle only discovered these unclaimed assets when the Department of Revenue mailed an unclaimed property section notice to Karmelle in July 2022.

Karmelle's proposed spreadsheet valued the net community assets at $476,546.87, with Karmelle to receive $366,813 in value (comprised of the house and car) and David to receive

---

[7] These orders are not part of the record in this appeal.

$109,633.87. Karmelle also requested approximately $14,000 in attorney fees on remand under RCW 26.09.140.

David requested the trial court divide the community assets 50/50. He argued that Karmelle's requested distribution of community assets would result in a "patent disparity," particularly in light of the fact that their 19-year marriage was a "mid-term marriage." CP at 131. David also argued that Karmelle has no impairments that prevent her from being gainfully employed.

During the June 2023 hearing, the parties rearticulated the arguments made in their respective motions. Additionally, David argued that there were several instances in which Karmelle was not open about finances during the marriage. In response, the trial court stated:

> [David] took all the money out of [a] retirement account, never said a word, and invested it in an enterprise that [Karmelle] wasn't part of.
>
> . . . .
>
> . . . [I]f you want to talk about people's not being terribly honest and open with each other, that goes both ways.
>
> . . . .
>
> . . . The difference is . . . that when [the court] asked [Karmelle] about it, she was honest.
>
> [David], the problem I have is . . . I cannot figure out what happened to things. They just simply disappeared—sort of. [David's] candor, his clarity in the testimony is not there. And that's what led me to the conclusion I made. On several accounts . . . he just doesn't come forward. I got to tell you, candidly, it looked to me like at first he's hiding assets. Hiding.
>
> I kind of got persuaded that may not be exactly what's happening, but suddenly find money escheated to the State of Washington. Now, nobody just gives money to the State of Washington . . . intentionally.

7

No. 59720-9-II

VRP (June 30, 2023) at 38-39.

The trial court then walked through its considerations:

The one thing I do know is the disparate income is very serious in this particular case. And we can say, well, get a job. We can say that. On the other hand, we have to look at this and what the reality really is at this point. . . .

We have income, part-time income of $16 an hour.[8] During the marriage, most of the marriage, the finding of this Court was [Karmelle] didn't work at all. That was the decision of the parties and not something that—was something that was even in dispute, as far as I know, the whole time they were married, or most of the they were married, or very little dispute, if there was one. We do have the problem of 180-some thousand dollars a year income, one party, and $16 an hour, 20 hours a week for the other. That is a reality.

How to actually handle that in the circumstances, I was trying to do my very best to leave [David] with assets that were less than clear because it was his lack of clarity that added to it.

But nevertheless, given the holding of the Court of Appeals—which by the way did not say: Come back and divide it 60/40 with taking those assets out. It does not say that. It does not say: Divide it 50/50 clearly. It says: Everybody agreed to 60—well, it didn't contest the 60/40. You are also correct—both counsel are correct that it didn't limit the Court to make it 60/40 either.

. . . .

The idea was: All right. [David], go on with your life; pay the $6,000 a month as ordered, pay the $4,000 a month as ordered, pay the $3,000 a month as ordered. Which was tended to be a little more generous than I had in mind, because [Karmelle] got the house; therefore, she has the assets to sustain her life. Not like [David] has.

Not like [David has]. For the rest of [his] life, for the rest of the time [he] want[s] to work, the income [he is] going to have is substantially more than [Karmelle] could ever make. . . . So the question is: How the heck do I make this fair to everybody?

---

[8] Based on medical notes in this appeal, the record suggests that Karmelle is not currently working. However, because Karmelle was working during the original dissolution proceedings and Karmelle did not request a modification to spousal support, the trial court did not consider the medical notes.

I am considering the longevity of the marriage. It's not a short-term marriage, it's really not even a medium-term marriage. The case law I've read . . . it doesn't say 25 years is necessary [for a long-term marriage]. Doesn't say that 10 years is necessary. But it kind of says, look, somewhere after 10 to 12, now you're getting beyond mid-term. Somewhere below 8, now you're kind of short-term. But it never actually does give us a scale to really talk about.

. . . .

So this is a long-term marriage. . . .

. . . .

The standard of living during marriage is quite good for both parties. A lot of travel, particularly after separation. But a lot of things go on quite well for both parties. It's still on the higher level.

What's going to happen over time to these parties? Well, for the next few years for sure [David] is going to do quite well. [Karmelle] has got an uphill battle even if she went back to work tomorrow. The idea that [Karmelle] could make more than $17 an hour or $25 an hour seems to be quite another . . .

VRP (June 30, 2023) at 65-68. The trial court stated its ultimate goal was try to reach a point where both David and Karmelle could maintain a similar living standard as they had during marriage. Also, the trial court noted that David did not appeal the spousal maintenance award to Karmelle.

The trial court then discussed Karmelle's request for attorney fees:

[T]he standard here, need and ability to pay is really the standard. And intransigence. Those are the two standards. There was intransigence. I'm not changing my opinion on that at all. There[] was intransigence. [David] did not turn over documents when he should have. He did not come forward with a clear statement of what the heck is going on[,] on top of it all.

VRP (June 30, 2023) at 78-79. However, later, the trial court stated its primary consideration was Karmelle's ability to pay and not David's intransigence. The trial court clarified that it had

9

previously considered David's intransigence in the original dissolution proceedings when it awarded Karmelle $30,000 in attorney fees, which David still owed.

Finally, the trial court determined that it was not controlled by its previous 60/40 split of community assets. The court further determined that Karmelle had some ability to pay her attorney fees and would not award her the entirety of the requested attorney fees on remand. Instead, the trial court awarded Karmelle $5,000 in attorney fees.

The trial court entered findings and conclusions on remand. The trial court awarded the family home and one car to Karmelle, valued at $366,813. David received all other community assets, valued at $109,633.87. The respective values translated into a 71.4/28.6 percent split in favor of Karmelle.

The trial court ordered a money judgment against David in favor of Karmelle for $35,000 in attorney fees. The spousal maintenance award remained the same as in the January 2022 dissolution decree. In its findings and conclusions on remand, the trial court provided extensive reasoning that reiterated its oral ruling during the remand hearings.

David appeals.

## ANALYSIS

David argues that the trial court abused its discretion when it divided community property, resulting in a 71.4/28.6 percent split in favor of Karmelle. David also argues that the trial court abused its discretion when it awarded attorney fees to Karmelle on remand. We disagree.

A.  DIVISION OF PROPERTY

    1.  Legal Principles

In dissolution proceedings, RCW 26.09.080 guides the trial court in the division of assets. Under RCW 26.09.080:

> the court shall . . . make such disposition of the property and the liabilities of the parties . . . as shall appear just and equitable after considering all relevant factors including, but not limited to:
>> (1) The nature and extent of the community property;
>> (2) The nature and extent of the separate property;
>> (3) The duration of the marriage or domestic partnership; and
>> (4) The economic circumstances of each spouse . . . at the time the division
> of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

A just and equitable division of assets does not require an equal division of assets or "'mathematical precision.'" *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013) (quoting *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)), *review denied*, 180 Wn.2d 1011 (2014). Rather, it must be based on fairness, considering "'all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.'" *Id.* (quoting *Crosetto*, 82 Wn. App. at 556).

"A trial court has broad discretion in distributing marital property." *In re Marriage of Niemi*, 19 Wn. App. 2d 357, 362, 496 P.3d 305 (2021). Furthermore, a trial court is in the best position to determine issues of fairness. *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 476, 421 P.3d 1046, *review denied*, 191 Wn.2d 1025 (2018). Generally, the longer the marriage, "'the more likely a court will make a disproportionate distribution of the community property.'" *Id.* at 476-77 (quoting *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007), *review*

*denied*, 163 Wn.2d 1055 (2008)); *Rockwell*, 141 Wn. App. at 243 ("Where one spouse is older, semiretired, and dealing with ill health, and the other spouse is employable, the court does not abuse its discretion in ordering an unequal division of community property.").

While Washington courts have found long-term marriages in cases of couples married 25 years or more, there is no statutory definition of a "long-term marriage." *See Rockwell*, 141 Wn. App. at 243. In cases of long-term marriages, a trial court's objective "is to place the parties in roughly equal financial positions for the rest of their lives." *Id.*

However, a spouse is not entitled as a matter of right to maintain the same standard of living as during marriage. *Kaplan*, 4 Wn. App. 2d at 474. Courts may also consider "'negatively productive conduct'" when determining an equitable division of assets. *In re Marriage of Steadman*, 63 Wn. App. 523, 528, 821 P.2d 59 (1991) (quoting *In re Marriage of Clark*, 13 Wn. App. 805, 809, 538 P.2d 145, *review denied*, 86 Wn.2d 1001 (1975)).

Appellate courts reverse property distributions only upon manifest abuse of discretion. *In re Marriage of Tulleners*, 11 Wn. App. 2d 358, 369, 453 P.3d 996 (2019). "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *Id.* (internal quotation marks omitted) (quoting *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005)).

2. Trial Court Did Not Abuse Discretion

David argues that the reasoning for the trial court's previous asset division—when there was a 60/40 split in favor of Karmelle—cannot now support a more disproportionate asset division of 71.6/28.4 following the removal of Encore from consideration. Karmelle argues that the trial

court appropriately considered the factors listed in RCW 26.09.080 and the ultimate asset distribution did not constitute an abuse of discretion.  We agree with Karmelle.

A trial court must consider (1) the nature and extent of community property, (2) the nature and extent of separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse.  RCW 26.09.080; *Kaplan*, 4 Wn. App. 2d at 476.  The record shows that the Yerburys have no separate property and their community property is relatively limited— it is comprised of their home, some stocks and bank accounts, and three vehicles for a combined net value of $476,546.87.

The record also shows that the trial court considered the statutory factors.  First, the trial court considered the disparity of incomes between Karmelle and David.  Specifically, the trial court noted that the disparity was "very serious" in that David has a gross income of around $180,000 per year while Karmelle works part-time making $16 per hour; thus, David's annual income was ten times that of Karmelle's.  VRP (June 30, 2023) at 65.  The trial court observed that David has the ability "to sustain his life at a much higher standard than [Karmelle]."  CP at 193.  Moreover, Karmelle was out of the workforce entirely throughout the marriage, and the prospect of her making significantly more than she currently does poses "an uphill battle."  VRP (June 30, 2023) at 68.  The trial court further stated: "For the rest of [David's] life, for the rest of the time [David] want[s] to work, the income [he is] going to have is substantially more than [Karmelle] could ever make.  We're not kidding anybody."  VRP (June 30, 2023) at 67.

The trial court also considered the longevity of David and Karmelle's marriage and found that their 19-year marriage qualified as a long-term marriage.[9] Generally, the longer the marriage, the more likely a court is to make a disproportionate distribution of community assets. *Kaplan*, 4 Wn. App. 2d at 476-77. The trial court considered "providing financial continuity and stability potential to [David and Karmelle] for the near future" and noted that both parties had a "quite good" standard of living during the marriage. CP at 192; VRP (June 30, 2023) at 68. To that end, the trial court ordered spousal maintenance to be paid to Karmelle,[10] but the trial court considered the spousal maintenance award within the context of the community asset distribution. The trial court concluded that:

> Despite the fact this is a long-term marriage and the significant disparity in future potential income and assets of the parties, the maintenance award granted to [Karmelle] is for a duration of only eight years from the date of separation rather than for the remainder of her life. The court is awarding [Karmelle] all interest in the community residence (subject to a mortgage) and all interest in a community owned vehicle. Thereby she will have the opportunity of the stability of remaining, if she chooses, in the home she has lived in for several years and not have to purchase a different car to drive.

CP at 193.

Finally, the trial court stated that David consistently failed to be clear in his communication regarding assets. Courts may consider "'negatively productive conduct'" when determining an

---

[9] We note that the record also shows that David and Karmelle began living together and had children together years before they actually married—factors that the trial court *did not* consider when it found a long-term marriage. During the remand proceedings, David argued that 19 years of marriage did not qualify as a "[l]ong-term marriage"; however, he appears to have abandoned that argument on appeal. VRP (June 30, 2023) at 46.

[10] Despite David's complaint that he must pay "significant spousal support," David did not appeal the trial court's spousal maintenance award. Br. of Appellant at 15.

equitable division of assets. *Steadman*, 63 Wn. App. at 528 (quoting *Clark*, 13 Wn. App. at 809).

In its findings and conclusions on remand, the trial court stated:

> [T]he court had credibility concerns (based on both [David's] candor and memory) about [David]'s description of the assets and his cooperation in disclosing assets. [David] failed to properly disclose relevant information in his discovery answers. [David] also engaged in unilateral conduct throughout the marriage, namely investing the community retirement account in a business, which dismissed the available pool of resources at the time of trial. [David] also allowed significant sums of assets to be escheated to the State of Washington, without explanation.
>
> It appears to the court [David] was either not being honest about the nature of property to be divided or was attempting to hide it from division. The court finds the dissipation and concealment of assets on the part of [David] a relevant factor in the attainment of a just and equitable distribution of marital property.

CP at 194.

David argues that the trial court's considerations were the same as when it previously awarded a 60/40 split of assets and "[t]he same, unchanged reason[s] cannot now support an even more disproportionate award." Br. of Appellant at 16. He further asserts that "just because there are not as many assets as the trial court originally thought there were, does not justify expanding the disparity of the division beyond the 60/40 that was originally justified."[11] Br. of Appellant at 17. However, David fails to point to any legal authority constraining the trial court to maintain the original 60/40 split.

First, the trial court on remand was not bound to maintain a 60/40 asset split. The record shows the trial court correctly interpreted this court's conclusion following David's first appeal:

> Because the court's consideration of nonexistent assets influenced all aspects of its asset distribution, *we reverse the decree as to all asset distribution*

---

[11] This court may note that during the remand proceedings, David did not argue that the 60/40 split was "justified" as he does now on appeal; instead, David advocated a 50/50 split of community assets.

[sic] and remand for reconsideration based [on] only those assets held at the time of the dissolution. Should any distribution be based on disputed facts, *the court should make the necessary findings in its redetermination of what is a just and equitable distribution.*

*Yerbury*, No. 84637-0-I, slip op. at 16-17 (footnote omitted). We did not direct the trial court to maintain a specific percentage division of assets or make new findings, only that it make "necessary findings" in the trial court's determination of what was "just and equitable." *Id.* at 16. Furthermore, the trial court stated that in the original dissolution proceedings, it did not intend to aim for a specific distribution; rather, the trial court wanted, "in equity, to provide [Karmelle] with a home and a car." VRP (Oct. 19, 2023) at 39. It just so happened that the trial court arrived at a 60/40 split in the original proceedings.

Second, both the statutory directive under RCW 26.09.080 and the weight of Washington case law point to the opposite of what David argues. Contrary to David's contention, a trial court has broad discretion to make a "just and equitable" division of assets. RCW 26.09.080; *see, e.g.*, *Niemi*, 19 Wn. App. 2d at 362; *Kaplan*, 4 Wn. App. 2d at 476; *Larson*, 178 Wn. App. at 138. Here, the trial court clearly explained its intention was to "somehow try to sustain the living standards during the marriage" to the best of the court's ability. VRP (June 30, 2023) at 72. Moreover, the trial court stated that it had originally awarded Encore and other "less than clear" assets to David because "it was [David's] lack of clarity that added to it." VRP (June 30, 2023) at 66.

The trial court expressly considered the statutory factors and David's negatively productive conduct. Because the trial court considered the fact that David and Karmelle had a long-term marriage, David is a high wage earner while Karmelle is not, and Karmelle did not work for the duration of the marriage, and because David engaged in negatively productive conduct during the

16

dissolution proceedings, the trial court did not abuse its discretion when it divided the community assets as it did.

B.      ATTORNEY FEES ON REMAND

David argues that the trial court abused its discretion in awarding Karmelle attorney fees on remand because "[g]iven the distribution of property and [spousal] support, Karmelle does not have financial need."  Br. of Appellant at 20.  Additionally, David argues that the trial court should not have awarded Karmelle attorney fees on remand "from an appeal that she lost."  Br. of Appellant at 21.  We disagree.

1.      Legal Principles

RCW 26.09.140 provides in part:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

In awarding fees, courts consider a party's need, "'the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property.'"  *In re Marriage of Davison*, 112 Wn. App. 251, 259, 48 P.3d 358 (2002) (quoting *In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509, *review denied*, 130 Wn.2d 1019 (1996)).

Additionally, "[a]s an independent ground we may award attorney fees and costs based on intransigence of a party, demonstrated by litigious behavior, bringing excessive motions, or discovery abuses."  *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002),

*review denied*, 148 Wn.2d 1011 (2003); *accord In re Marriage of Williams*, 84 Wn. App. 263, 272, 927 P.2d 679 (1996) ("Once intransigence is established, the financial resources of the spouse seeking fees are irrelevant."), *review denied*, 131 Wn.2d 1025 (1997). "An award of attorney fees under RCW 26.09.140 is discretionary and is reviewed for abuse of discretion." *Williams*, 84 Wn. App. at 272 (footnote omitted).

2. No Abuse of Discretion

Here, Karmelle requested approximately $14,000 in attorney fees for work associated with remand proceedings. The trial court expressly stated, "The standard is need and ability to pay." VRP (June 30, 2023) at 79.

The record shows that the trial court reviewed Karmelle's need and ability to pay based on the distribution of marital assets:

> She has got a home. She's got a car. She's got a significant amount of income based upon the maintenance support. Plus, I imagine by now she's got some income on her own. . . . Then my concern about a need, ability to pay, I wasn't going to grant necessarily the entire amount.

VRP (Oct. 19, 2023) at 47-48. The trial court further stated that based on the spousal support Karmelle was set to receive, to award her the entire requested amount seemed "to be excessive" and awarded Karmelle $5,000 in attorney fees on remand. VRP (Oct. 19, 2023) at 49. Thus, consistent with RCW 26.09.140, the trial court properly considered Karmelle's need and ability to pay in awarding Karmelle attorney fees on remand.

The record also shows that David's intransigence was not a factor in the trial court's award of fees during the remand proceedings. The trial court mentioned David's intransigence in relation to the court's decision in the original dissolution proceedings when it awarded Karmelle $30,000

in attorney fees, which David still owed. However, the trial court made clear that the attorney fees award on remand was based on Karmelle's need and ability to pay. Thus, David's argument that an "attorney fee award cannot be justified on grounds of intransigence" is unpersuasive as intransigence was not the basis for the trial court's award of attorney fees on remand to Karmelle. Br. of Appellant at 22.

Because the trial court properly considered Karmelle's need and ability to pay, along with the general equity of granting attorney fees based on the distribution of marital assets, the trial court did not abuse its discretion when it awarded Karmelle $5,000 in attorney fees on remand. *Davison*, 112 Wn. App. at 259.

ATTORNEY FEES ON APPEAL

Karmelle requests attorney fees on appeal.[12] An appellate court may award attorney fees "[i]f applicable law grants . . . a party the right to recover reasonable attorney fees or expenses on review." RAP 18.1(a).

RCW 26.09.140 provides that on appeal, "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." As discussed above, "[a]n award of attorney fees under RCW 26.09.140 is based on consideration of 'the parties' relative ability to pay' and 'the arguable merit of the issues raised on appeal.'" *Tupper v. Tupper*, 15 Wn. App. 2d 796, 815, 478 P.3d 1132 (2020) (internal quotation marks omitted) (quoting *Muhammad*, 153 Wn.2d at 807).

---

[12] Both parties filed a financial declaration.

Here, the record shows that David has a considerably higher income than Karmelle and, therefore, a greater ability to pay. Additionally, because we hold that the trial court did not abuse its discretion in either of the two issues David raised on appeal, Karmelle is the prevailing party. Thus, we grant Karmelle's request for attorney fees on appeal under RAP 18.1 and RCW 26.09.140.

## CONCLUSION

On remand, the trial court properly considered the statutory factors in its distribution of community assets and in its award of attorney fees. Therefore, the trial court did not abuse its discretion. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Che, J.