## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 54823-2-II |
| AMY A. HART, | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SCOTT R. HART, | |
| Appellant. | |

WORSWICK, J. — Scott Hart appeals the trial court's dissolution decree that distributed property, imposed spousal maintenance, and awarded attorney fees. On appeal, Scott argues that the trial court mischaracterized (1) his ERS 401(a) retirement account as community property, (2) Amy Hart's credit card debt as community property, and (3) Scott's inheritance as community property.[1] He also argues that the (4) division of the family home was unjust and inequitable. Finally, he disputes the trial court's award of (5) spousal maintenance and (6) attorney fees.

The trial court erred in characterizing and calculating the offsets on the home equity, but it did not abuse its discretion in awarding Amy spousal maintenance and attorney fees. Accordingly, we affirm in part, reverse in part, and remand for the trial court to recalculate the offsets to the home equity in accordance with our decision.

---

[1] Because Scott Hart and Amy Hart share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

FACTS

Scott and Amy got married in Minnesota in 1994. Shortly after their marriage, Scott started a new job at the Washington State Department of Transportation, and the couple moved to Washington. At that time, Amy taught elementary school. Amy had a Bachelor's degree in elementary education and a Master's degree in early childhood development. Amy and Scott bought a home in Tacoma in 1995, which they ultimately sold in exchange for a new house in Milton in 2011. The Harts had a largely comfortable lifestyle.

In April 2001, Amy became pregnant with twins and was put on bed rest. She stopped working. The couple then had two more children. After having their last biological child, the couple decided to adopt three children they had fostered. They received $2,007 monthly from the Department of Social and Health Services (DSHS) for adoption benefits for the three children. Scott managed most household finances, except for the adoption support, which was deposited into Amy's personal account. Amy did not return to work for the duration of the marriage, and Scott was the sole wage earner.

In February 2018, Amy asked Scott to move out of the family home, alleging emotional abuse and anger issues. Amy returned to work in March and eventually got her teaching license reinstated. Amy filed a petition for legal separation in July 2018. Scott responded by asking for a dissolution instead of a separation. The trial court entered a temporary family law order in October 2018. The temporary order split the parties' expenses and ordered that Scott pay expenses associated with the house, including property taxes and insurance until October 2018. For almost a year after their separation, Scott continued to pay all household bills.

Following a four-day trial, the trial court entered a dissolution decree and parenting plan.

The trial court determined the date of separation to be February 24, 2018. The parenting plan awarded primary custody to Amy. The trial court ordered child support in the amount of $2,499 per month in addition to the DSHS support. The trial court also awarded spousal support to Amy for a total of seven years as follows: $750 per month for the first 24 months, $600 per month for next 24 months, and $500 per month for the remainder of seven years.

The trial court divided most assets and debts equally. It divided all bank accounts and retirement accounts evenly as of the date of separation. The family home was awarded to Amy, and the court ordered her to refinance the home in her sole name. The home was valued at $650,000, with a balance of $263,912 and equity of $386,087. The trial court awarded 50 percent of the home's equity to each party. Instead of requiring Amy to pay Scott his portion of the home's equity, the court ordered a series of offsets against that equity. The offsets included a lengthy list, but the most relevant to the appeal were: (1) Amy's portion (45 percent) of the credit obligations, including Chase Freedom, Chase Slate, Eddie Bauer, and Old Navy credit cards; (2) Scott's ERS 401(a) retirement account with a balance of $67,560 as of June 4, 2019; (3) a State Farm Life Insurance Policy; (4) an Edward Jones IRA retirement account;[2] (5) a CUSO/Pershing account; and (6) Think Bank accounts numbered 7606, 3000, 3001, and 3002.[3]

In connection with the attorney fee award, both parties borrowed money to cover their share of attorney fees. Amy borrowed $120,000 from her father and Scott borrowed

---

[2] The trial court offset Scott's share of the home's equity based on a calculation of the funds remaining after taxes and penalties following an early withdrawal of funds.

[3] The account balances were are as follows: (1) Think Bank 7606 was $2,000; (2) Think Bank 3000 was $2,161; (3) Think Bank 3001 was $131; (4) Think Bank 3002 was $3,281; (5) Pershing bank account was $5,855; and (6) State Farm Universal Life Policy was $16,735.

approximately $20,000 from his mother. The trial court awarded Amy $25,000 in attorney fees, $10,000 payable in cash and the remaining to offset equity in the home.

ANALYSIS

I. PROPERTY DIVISION

Scott argues that the trial court mischaracterized his ERS 401(a) post-separation contributions as community property, and Amy's credit card debt as community debt. He also argues that the trial court's division of the family home was not just and equitable. We agree that the trial court mischaracterized his post-retirement contributions, but otherwise disagree with his arguments.

A.    *Standard of Review*

Trial courts are entitled to broad discretion in dissolution proceedings. *In re Marriage of Wright*, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). Because the trial court is in the best position to determine what is fair, its decisions will be reversed only if there has been a manifest abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court abuses its discretion if its decisions are based on untenable grounds or untenable reasons. *Muhammad*, 153 Wn.2d at 803.

B.    *Characterization and Value of Property*

1. *Scott's ERS 401(a) Retirement Account*

i. *Valuation*

Scott argues that the trial court incorrectly valued his ERS 401(a) retirement account. We agree.

4

When the issue on appeal is whether the trial court placed an erroneous value on an asset, the appellate courts will normally treat the issue as factual. *In re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). We review findings of fact entered after a bench trial for substantial evidence. *Wilson*, 165 Wn. App. at 340. Substantial evidence exists when there is sufficient evidence to persuade a fair-minded, rational person of the finding's truth. *Wilson*, 165 Wn. App. at 340. We affirm a trial court's valuation if it is supported by substantial evidence. *Wilson*, 165 Wn. App. at 340.

Amy presented evidence that Scott's retirement account was valued at $67,560 as of June 4, 2019—approximately 16 months after the parties' separation date of February 24, 2018. However, Scott presented evidence showing that the retirement account was valued at $49,275 at the time of the parties' date of separation. Pursuant to a judicial subpoena following trial to determine the valuation of the parties' accounts, the trial court held a hearing to discuss the accounts' valuations. At the hearing, Scott's attorney made the court aware of the mistake in the initial valuation of the retirement account at $67,560. Scott acknowledged, through his attorney, that the valuation was a mistake during discovery. After debate between the parties, the trial court acknowledged that $67,560 was not the correct value, and it noted:

> I definitely wanted these values to be as of the date of separation. So if the number's wrong, the number's wrong . . . because we want to get the number right. So now we figured out that the number that was presented at trial regarding the Seattle account was wrong. And I don't understand why I wouldn't be using the correct number now that it's known. That just seems fair to me . . . I'm going to use the actual number as of the date of separation.

8 Verbatim Report of Proceedings (VRP) (Jan. 31, 2020) at 760-63. It is clear from the trial judge's remarks that he intended to use the valuation of the retirement account at the date of separation, $49,275. Yet, the trial court's findings listed the value of Scott's ERS 401(a) retirement account

at $67,560, and awarded half of that amount to Amy.[4]  In light of the trial court's remarks and the evidence presented at trial, the figure is an error unsupported by substantial evidence.

ii.  *Characterization*

Scott also argues that the trial court mischaracterized his post-separation contributions to his ERS 401(a) retirement account as community property.  We agree.

Earnings or accumulations are separate property if "'acquired during permanent separation.'"  *In re Marriage of Schwarz*, 192 Wn. App. 180, 189, 368 P.3d 173 (2016) (quoting *In re Marriage of White*, 105 Wn. App. 545, 550, 20 P.3d 481 (2001)).  Here, the trial court characterized Scott's ERS 401(a) retirement account as community property. The parties do not dispute that the date of separation was February 24, 2018, and that Scott alone made contributions after the separation.  In addition, the trial court's findings do not explain why the trial court classified Scott's contributions as community property; in fact, the trial court's remarks show that the trial court intended to divide only the portion of the account acquired during the marriage.  Accordingly, it appears the trial court did not intend to characterize all of Scott's contributions to his retirement account, including his post-separation contributions, as community property.  The evidence does not support a finding that Scott's post-separation contributions to his retirement account were made during the marriage.  Thus, the findings do not support a conclusion that Scott's post-separation contributions are community property.

---

[4] It appears likely that the mistake was a result of the sheer volume of evidence on numerous assets presented during the four-day trial.

2. *Amy's Credit Card Debt*

Scott argues that Amy acquired debt on four credit cards after the marriage, and thus her debt was wrongfully divided as community debt. We disagree.

Generally, debts incurred after the date of separation are separate debt. *Schwarz*, 192 Wn. App. at 193. However, family expenses are community debt even if charged after the separation. *Sunkidd Venture, Inc. v. Snyder-Entel*, 87 Wn. App. 211, 216, 941 P.2d 16 (1997).

The trial court ordered that Scott pay 55 percent of the community credit card debt. Amy testified that she used the cards to buy clothes for the children and other expenses related to the family post-separation. She also testified to the balances of the credit cards closest to the date of separation as follows: (1) $2,800 for Chase Freedom; (2) $700 for Chase Slate; (3) $2,400 for Eddie Bauer; and, (4) approximately $3,800 for Old Navy. The balances are consistent with the trial court's valuation of the debts.

Therefore, substantial evidence supports both the valuation and characterization of the debt. The trial court did not err in concluding that the credit card debt was community debt.

C.      *Equity in the Family Home*

Scott argues that the trial court erred in granting Amy "all of the equity in the family home" because the division was not just and equitable. We disagree.

A just and equitable division of property in a marriage dissolution action does not require mathematical precision, but, rather, fairness, based upon a consideration of all the marriage's circumstances, both past and present, and an evaluation of the future needs of parties. RCW 26.09.080. The court has "broad discretion" to determine what is just and equitable based on the circumstances of each case. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572

(2007). Just and equitable does not mean equal. *In re Marriage of DewBerry*, 115 Wn. App. 351, 366, 62 P.3d 525 (2003). "A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion." *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices." *Calhoun*, 178 Wn. App. at 138.

Here, the trial court split the equity in the home evenly, and imposed a series of offsets to Scott's portion of the equity. The list of offsets included: (1) a State Farm Life Insurance Policy; (2) an Edward Jones IRA retirement account; (3) a CUSO/Pershing account; (5) Think Bank accounts numbered 7606, 3000, 3001, and 3002. Scott makes three arguments as to why the offsets led to an unjust and unequitable division.

1. *Tax Penalties*

First, Scott argues that because his Edward Jones IRA account funds are presently inaccessible to him, the trial court failed to account for tax penalties of withdrawing retirement funds early, making the division inequitable. We disagree.

The trial court addressed Scott's tax argument and rejected it. Also, Scott does not present case law supporting his position that offsetting the house equity with a non-readily accessible funds in a dissolution is somehow unfair or unjust. Scott's disagreement on how the court divided the property does not amount to a manifest abuse of discretion sufficient to warrant reversal. *Calhoun*, 178 Wn. App. at 138. Therefore, this argument fails.

2. *Think Bank Accounts, State Farm Life Insurance Policy, and Pershing Account*

Next, Scott argues that the value of the bank accounts he was awarded to offset his equity in the house were close to zero in value, thus making the division unfair. We disagree.

Scott argues that the bank accounts were worthless because he used the funds to pay for the household expenses as ordered by the trial court through a temporary family law order, reducing the account balances to close to zero. Scott was responsible for the mortgage, his new residence after separation, utilities for the family home, his portion of the home's taxes and insurance, and other expenses. Scott testified that he paid the family bills, estimated at $7,350 per month from February to October. He used his Think Bank account 3002 to pay property taxes of approximately $5,613 and other costs for a 10-month period. It is unclear from Scott's testimony which bank accounts he used to pay other family expenses, but he testified that two of the three Think accounts had close to zero balances.

Scott also testified that he used his State Farm and Pershing account balances to set aside money for himself. For example, he testified that he used the balances of the State Farm and Pershing accounts to pay for some of his attorney fees in connection with this dissolution. There is no additional evidence about the balances of those accounts. Nonetheless, even if the value of the accounts was zero, the trial court correctly used the valuation of the account as of the date of separation, as it did with all other balances. And, the fact that Scott spent the balances from the State Farm and Pershing accounts on attorney fees does not support an argument that the distribution was unjust. *DewBerry*, 115 Wn. App. at 366.

In essence, Scott's argument asserts that the value of what he was awarded is not equal to what Amy was awarded; however, a disagreement on the amounts of distribution do not amount

to manifest abuse of discretion because such an award is not unreasonable. *Calhoun*, 178 Wn. App. at 138. Therefore, this argument fails.

     3. *Inheritance*

     Scott's third argument is that the trial court erroneously offset his equity with a bank account containing his inheritance. We agree.

     It is well established that inheritance is separate property. *In Re Marriage of White*, 105 Wn. App. 545, 550, 20 P.3d 481 (2001). When separate property is "hopelessly commingled" such that it cannot be traced back to one party, the entire amount is rendered community property. *Schwarz*, 192 Wn. App. at 188-190.

     Scott testified that $2,000 of the $2,161 balance on Think Bank account 3000 was inheritance. His testimony is uncontested, and Scott is the sole owner of the Think Bank account 3000. The inheritance was not commingled with community assets and can be easily traced back to Scott. Thus, evidence does not support a finding that the Think Bank account 3000 was community property, and the trial court mischaracterized this account.[5]

D.    *Remedy*

     When the issue on appeal is whether the trial court mischaracterized the property as community or separate, remand is appropriate if "'(1) the trial court's reasoning indicates that its division was significantly influenced by its characterization of the property, and (2) it is not clear

---

[5] Amy argues that even if the trial court mischaracterized the bank account, it was harmless error. Br. of Resp't at 20. "'Although failure to properly characterize property [in dissolution action] may be reversible error, mischaracterization of property is not grounds for setting aside a trial court's property distribution if it is fair and equitable.'" *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997) (quoting *In re Marriage of Shannon*, 55 Wn. App. at 140). We hold that this error, in combination with the other errors, is not harmless.

that had the court properly characterized the property, it would have divided it in the same way.'" *Schwarz*, 192 Wn. App. at 192 (quoting *Shannon*, 55 Wn. App. 137, 142, 777 P.2d 8 (1989)).

Here, the trial court mischaracterized (1) Scott's post-separation contributions to his ERS 401(a) retirement account and (2) Scott's inheritance. The trial court noted as part of its oral ruling that

> The house is going to Ms. Hart. Mr. Hart's half of the equity has to come out of that. And Ms. Hart's position was that her half of the bank accounts and the retirement accounts should help balance that out. And that's the basic principle that I'm doing is that Mr. Hart is entitled to half the equity, but basically trying to credit this on Ms. Hart's half of the bank and retirement accounts. That's what I'm trying to get to.
>
> Now, because of that, remember the law requires fair and just distribution. That doesn't necessarily mean even.

6 VRP (Nov. 20, 2019) at 705-06. The trial court also explained that it is more likely to award Amy anything related to the children and their well-being because she is the primary custodial parent. It is unlikely that the trial court would have divided the property differently had it characterized Scott's assets correctly. However, due to the incorrect valuation of Scott's ERS 401(a) retirement account and his inheritance, the totality of errors warrant remand with instructions to recalculate the offsets imposed against the value of the home.

## II. SPOUSAL MAINTENANCE

Scott argues that the trial court abused its discretion by awarding Amy spousal maintenance. We disagree.

A trial court's order on spousal maintenance is reviewed for an abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). Maintenance not based on a

11

fair consideration of the statutory factors constitutes an abuse of discretion. *In re Marriage of Crosetto*, 82 Wn. App. 545, 558, 918 P.2d 954 (1996). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). A "demonstrated capacity of self-support does not automatically preclude an award of maintenance." *In re Marriage of Washburn*, 101 Wn.2d 168, 178, 677 P.2d 152 (1984). "'Maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time.'" *In re Marriage of Condie*, 15 Wn. App. 2d 449, 472, 475 P.3d 993 (2020) (quoting *Washburn*, 101 Wn.2d at 179). When determining a spouse's need for maintenance, child support does not affect maintenance calculations. *Condie*, 15 Wn. App. 2d at 452.

A court may grant spousal maintenance for either spouse if maintenance is for a just period of time and after consideration of all relevant factors, such as

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> (c) The standard of living established during the marriage or domestic partnership;
>
> (d) The duration of the marriage or domestic partnership;
>
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090. In addition to the statutory factors, courts may also consider the division of property in determining whether maintenance is appropriate. *Condie*, 15 Wn. App. 2d at 470-72.

Here, Amy was a full-time employee with a Master's degree in education. Amy testified to her standard of living during the 24-year long marriage. She also reported an income of $7,636 before child support and expenses of $9,291. In comparison, Scott's income is approximately $10,313. Scott reported expenses of $6,937.

Although the factors do not strongly weigh in favor of awarding Amy maintenance, the trial court has broad discretion to do so. *Condie*, 15 Wn. App. 2d at 470-72. The lack of strong evidence supporting the statutory factors does not amount to an abuse of discretion sufficient to reverse the trial court's spousal maintenance award. Therefore, the trial court did not err in awarding Amy maintenance.

Scott argues that Amy's income is higher than his, therefore she does not have a need for maintenance and Scott does not have the ability to pay. However, Scott relies on a calculation of the parties' income which incorrectly includes the child support award. *Condie*, 15 Wn. App. 2d at 452. Because Scott relies on inaccurate calculations of the parties' incomes, his argument fails.

### III. ATTORNEY FEES

Scott argues that the trial court abused its direction by awarding Amy attorney fees. We disagree.

The court may consider the parties financial resources when awarding attorney fees. RCW 26.09.140. To vacate a fee award, Scott bears the burden of showing "that the trial court exercised [its] discretion in a way that was clearly untenable or manifestly unreasonable." *In re Marriage of Knight*, 75 Wn. App. 721, 729, 880 P.2d 71 (1994). In considering financial resources of both parties when deciding whether to award costs and attorney fees, the court must balance the needs of requesting party against the other party's ability to pay. *In re Marriage of Nelson*, 62 Wn. App. 515, 520-21, 814 P.2d 1208 (1991).

Here, the trial court awarded Amy attorney fees of $25,000 split between a monetary judgment and an offset on the house's equity. Both attorneys submitted billing statements to the court. Both parties testified to taking out loans to pay attorney fees. Amy incurred about $120,000 in attorney fees, and Scott incurred approximately $58,000 in attorney fees. The trial court found that Amy needed assistance, and Scott had the ability to pay. In addition, Scott's income exceeded Amy's. Because the award is not unreasonable, the trial court did not abuse its discretion by awarding attorney fees.

Scott and Amy both request attorney fees on appeal. RCW 26.09.140 authorizes this court to award reasonable attorney fees after considering the parties' financial need and ability to pay. *In re Marriage of Hoseth*, 115 Wn. App. 563, 575, 63 P.3d 164 (2003). Both Scott and Amy filed affidavits of financial need, which we have reviewed. Appellant's Affidavit of Financial Need; Resp't Affidavit of Financial Need. Both parties demonstrate some need for attorney fees on appeal, but neither demonstrates an ability to pay for the other's fees. Considering the parties' financial resources, we decline to award either party attorney fees on appeal.

14

No. 54823-2-II

Accordingly, the trial court did not err in awarding Amy attorney fees, however we decline to award either party attorney fees on appeal.

CONCLUSION

The trial court improperly characterized some of Scott's assets as community property. The trial court did not abuse its discretion by awarding Amy spousal maintenance and attorney fees. We decline to award attorney fees on appeal.

We affirm in part, reverse in part and remand for the trial court to recalculate the offsets to the home equity.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Glasgow, A.C.J.

_____
Price, J.

15